Argued and submitted February 11, reversed and remanded May 11, petition for review allowed August 30, 1994 (320 Or 109)

Jane DOE,
Personal Representative of
the Estate of John Doe,
and Jane Doe, individually,
*Appellants,*

*v.*

AMERICAN RED CROSS
and Frans Peetoom,
*Respondents.*

(9010-06734; CA A74444)

874 P2d 828

———————————

Robert S. Sola argued the cause for appellants. With him on the briefs were Michael L. Williams and Williams & Troutwine, P.C.

Ronald D. Lee argued the cause for respondents. With him on the brief were Arnold & Porter, Lisa E. Lear, Darleen Darnall, and Bullivant, Houser, Bailey, Pendergrass & Hoffman.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

■ Plaintiff brought this action, individually and as the personal representative of her husband's estate, for allegedly tortious transmission of the Human Immunodeficiency Virus (HIV) by a blood transfusion. The trial court granted defendants' motion for summary judgment on the ground that the action was time barred. We review the record in the light most favorable to plaintiff to determine whether there is any genuine question of material fact, and whether defendants are entitled to judgment as a matter of law. *Park v. Hoffard*, 315 Or 624, 847 P2d 852 (1993). We reverse.

On March 7, 1985, during elective hip surgery at the Willamette Falls Community Hospital, plaintiff's husband received a transfusion of blood provided by defendant American Red Cross. In October, 1987, he was informed that some of that blood may have been infected with HIV, the virus that causes Acquired Immune Deficiency Syndrome (AIDS). Later that month, a test indicated that plaintiff's husband had contracted HIV. In July, 1988, a second test confirmed that result. On July 16, 1990, he was diagnosed with AIDS.

In October, 1990, a friend told plaintiff and her husband about a judicial proceeding in Seattle, in which a jury supposedly found that the Red Cross had negligently provided HIV infected blood for use in a transfusion.[1] Before that time, plaintiff and her husband had not suspected that defendants might have been negligent in providing the infected blood. Plaintiff testified at deposition that they had "held the Red Cross in very high esteem [and] had complete trust in [it]."

On October 29, 1990, plaintiff's husband filed claims against defendant American Red Cross for negligence and strict products liability. In the same complaint, plaintiff asserted a claim for loss of consortium. On November 8, 1990, he amended the complaint to add similar claims against defendant Peetoom, as the Director of Blood Services for the Pacific Northwest Region of American Red Cross.

---

[1] It was later discovered that the defendant in the Seattle case was not the Red Cross. However, it does not appear that either plaintiff or her husband was aware of that fact at any relevant time.

On August 18, 1991, plaintiff's husband developed bacterial pneumonia, an opportunistic infection that is often associated with AIDS. On August 22, 1991, he died from the pneumonia.

On October 11, 1991, plaintiff was appointed the personal representative of her husband's estate. On October 21, 1991, she filed a second amended complaint to allege that her husband had died and that she had been appointed his personal representative. The allegations of damages were also accordingly amended. The complaint continued to allege counts for negligence, strict products liability and loss of consortium. Plaintiff subsequently conceded that the claim for strict product liability was not viable. There is no issue on appeal with regard to that claim.

Defendants moved for summary judgment on the remaining claims, on the ground that they were time barred. Plaintiff argued that her claims are governed by the statute of limitations contained in the current version of ORS 30.020. That statute provides that the personal representative may commence a wrongful death action within three years of discovery of the injury that caused the decedent's death. Defendants argued that plaintiff did not commence a wrongful death action pursuant to ORS 30.020, but rather continued the action that was filed during her husband's life, pursuant to ORS 30.075. ORS 30.075 provides that an action may be continued by a personal representative, if it was filed by the decedent within the limitations established in ORS 12.110. Defendants argued that, therefore, the claims are governed by the two-year statute of limitations contained in ORS 12.110(4). The trial court held that plaintiff's claims were barred either by the statute of limitations or, alternatively, by the five-year statute of ultimate repose for medical malpractice claims. ORS 12.110(4). It did not specify which statute of limitations applied.

On appeal, the parties agree that ORS 30.075 does not apply to this case. Their agreement is not dispositive. Because defendants argued below that ORS 30.075 applied, and because that may have been the basis for the trial court's ruling, its applicability to this case is properly before us.[2]

_____

[2] On appeal, defendants argue that the applicable statute of limitations is provided by the pre-1991 version of ORS 30.020. Before 1991, ORS 30.020(1) provided:

ORS 30.075(1) provides:

"Causes of action arising out of injuries to a person, caused by the wrongful act or omission of another, shall not abate upon the death of the injured person, and the personal representatives of the decedent may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission. *The action shall be commenced within the limitations established in ORS 12.110 by the injured person and continued by the personal representatives under this section, or within three years by the personal representatives if not commenced prior to death.*" (Emphasis supplied.)[3]

Under that statute, if the action was commenced by the injured person prior to death, then it is timely if it was filed by the decedent within the limitations established by ORS 12.110.[4]

■ Contrary to plaintiff's contention, her second amended complaint did not commence a new action for wrongful death, for which ORS 30.020 would provide the relevant statute of limitations. The second amended complaint continued the action commenced by plaintiff and her husband, and alleged additional damages for wrongful death. The second amended complaint alleged the same operative facts and the same underlying claims that were alleged in the first amended complaint. We conclude that the action was commenced by plaintiff and her husband before his death,

---

"When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent * * * may maintain an action against the wrongdoer, if the decedent may have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission. *The action shall be commenced within three years after the occurrence of the injury causing the death of the decedent.*" (Emphasis supplied.)

That version of ORS 30.020 contained no discovery rule. *Eldridge v. Eastmoreland General Hospital*, 307 Or 500, 504-05, 769 P2d 775 (1989). Plaintiff argues that ORS 30.020, as amended in 1991 to expressly provide a discovery rule, Or Laws 1991, ch 471, § 1, provides the applicable limitation.

[3] The damages available in a survival action were once limited to compensation for the decedent's medical services and lost earnings, up to $25,000. ORS 30.075 (1979). In 1981, that statute was amended to delete any limitation on the amount or type of damages available. *See* Or Laws 1981, ch 810, § 1.

[4] There is no contention that the claim for loss of consortium should be analyzed separately from the negligence claim. Accordingly, we treat them together.

and was continued by plaintiff as his personal representative under ORS 30.075. Therefore, plaintiff's action was timely filed if it was filed during her husband's life within the limitations established by ORS 12.110.[5]

The parties dispute whether the applicable provision of ORS 12.110 is subsection (1) or (4). ORS 12.110(4) applies to claims for medical malpractice. *See Skuffeeda v. St. Vincent Hospital*, 77 Or App 477, 484, 714 P2d 235, *rev den* 301 Or 240 (1986). It provides the statute of limitations in actions "to recover damages for injuries to the person arising from any medical, surgical or dental treatment." The trial court held:

> "The drawing of the blood from the donor constitutes a medical or surgical treatment or operation. Plaintiff contends the statute only applies to treatment of the plaintiff. The statute contains no such exclusion but applies to 'any' treatment or operation."

Just because the relevant historical facts include an event that could be considered medical treatment of a third party does not, by itself, make ORS 12.110(4) applicable.

The relevant inquiry is whether defendants provided "medical treatment" when they provided blood for use during plaintiff's husband's surgery. Defendants argue that preparing blood for use in a transfusion, and safeguarding it from contamination, require the medical and scientific expertise of health care professionals. They contend that any negligence in performing those tasks arises from medical treatment and that, therefore, ORS 12.110(4) applies to this action.

In response to a similar argument, the Wisconsin Supreme Court said:

> "The Red Cross in its blood banking activity does not professionally provide health care to others. The Red Cross collects blood from donors, tests it, processes it, and sells it to hospitals and physicians without knowledge of which patient

---

[5] We have previously held that ORS 30.075 applies to the continuation of an action, initiated by the decedent, to recover damages for the injury that caused the decedent's death. *Roe v. Pierce*, 102 Or App 152, 794 P2d 4 (1990). Although that decision was vacated on jurisdictional grounds, *Roe v. Pierce*, 313 Or 228, 832 P2d 1226 (1992), we find its reasoning regarding ORS 30.075 persuasive.

will ultimately receive the blood product. The Red Cross plays no role in the diagnosis, treatment or care of patients. The Red Cross is the supplier of a product that is used by health care providers in their treatment of patients. The Red Cross is similar to pharmaceutical companies that supply products for use by health care providers." *Doe v. American Nat. Red Cross*, 176 Wis 2d 610, 500 NW2d 264, 266 (1993). (Footnote omitted.)

■ The analogy between a blood supplier and a supplier of pharmaceuticals is persuasive. Although development and production of pharmaceuticals and other medical supplies surely requires medical and scientific expertise, selling them to a hospital could hardly be considered medical treatment. We hold that a person who provides a prepared product, such as blood, for general use in medical procedures, does not thereby undertake medical treatment. Because plaintiff's claims do not arise from medical treatment within the meaning of ORS 12.110(4), that provision does not apply to this case.

■ The applicable statute of limitations is ORS 12.110(1), which provides that an action

"for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years[.]"

That statute is tolled during a period in which the plaintiff reasonably fails to discover the injury. *U.S. Nat'l Bank v. Davies*, 274 Or 663, 669 n 1, 548 P2d 966 (1976).

 Plaintiff argues that an "injury" is not discovered until all of the elements of the claim, including the defendant's negligence in causing the harm, are or should have been discovered. Defendant argues that an "injury" is discovered when the harm is discovered, regardless of the plaintiff's reasonable failure to discover its negligent cause.

■■ That issue has now been resolved in plaintiff's favor. An "injury," as used in ORS 12.110(1), means "a legally cognizable harm." *Gaston v. Parsons*, 318 Or 247, 253, 864 P2d 1319 (1994).[6] A legally cognizable harm consists of three

─────────

[6] The specific issue in *Gaston* was the meaning of "injury" in ORS 12.110(4). However, the court noted that its "reading of 'injury' in ORS 12.110(4) is consistent with that word's meaning in ORS 12.110(1)[.]" 318 Or at 253.

elements: (1) harm; (2) causation; and (3) tortious conduct. 318 Or at 255. The statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts that would make a reasonable person aware of a substantial possibility that each of those three elements exists. 318 Or at 256.

■ As noted above, the original complaint was filed in October, 1990, and it was amended to add Peetoom as a defendant in November, 1990. Accordingly, summary judgment was proper with respect to each defendant if, more than two years before those respective filings, plaintiff and her husband were aware of facts that, as a matter of law, should have alerted them to a substantial possibility that they had suffered a legally cognizable harm.

Plaintiff argues that her husband's HIV infection created a risk of harm, but that it was not a harm in itself. *See Repp v. Hahn*, 45 Or App 671, 609 P2d 398, *rev den* 289 Or 373 (1980). She argues that the actionable harm occurred when her husband contracted AIDS. Defendants respond that a person who is infected with HIV has suffered a legally cognizable harm, and that a person who subsequently contracts AIDS has merely suffered an aggravation of the original harm. Therefore, they contend, the statute of limitations began to run when the HIV infection occurred. *See Raethke v. Oregon Health Sciences Univ.*, 115 Or App 195, 199, 837 P2d 977 (1992), *rev den* 315 Or 442 (1993).

We need not decide whether HIV infection is, as a matter of law, an actionable harm in itself. Even assuming that it is, there remain factual issues in this case with regard to when plaintiff and her husband should have known that his HIV infection was a harm, and when they should have known that it was tortiously caused.

In considering those issues, we must take care not to charge plaintiff and her husband, who were acting in 1987-88, with the knowledge that we would expect of a reasonable person in the same circumstances in 1994. Society's understanding of the relationship between HIV and

AIDS, and of the transmission of HIV in the blood, has evolved rapidly during the last decade.[7] One court confronted with issues very similar to those in this case has noted that "[i]t was not until 1984 that the medical community reached a consensus that AIDS was transmissible by blood." *Seitzinger v. American Red Cross*, Nos. 90-0046 and 90-3890 (ED Pa May 21, 1991) (Westlaw, 1991 WL 88023). That court continued:

> "Although it is known presently that HIV infection * * * ultimately causes the death of many persons so infected, this was not the state of knowledge during 1984 through 1988. Instead, during this time period, over ninety percent of infected persons were thought to be immune to the virus."

■ Defendants direct us to no evidence in this case that plaintiff's husband suffered any adverse health effects before his AIDS diagnosis, nor are we aware of any evidence that he undertook any treatment for his HIV infection, or otherwise incurred any medical bills. The sole evidence of harm relied on by defendants is the evidence of the HIV infection itself. As noted above, the correlation between HIV and AIDS, as they were understood in 1988, was not nearly as strong as it is today. There remains a genuine issue of fact about whether a reasonable person in 1988 would have been aware of a substantial possibility that the person had suffered a legally cognizable harm, rather than a mere risk of harm, when infected with HIV.

■ There also exists a question of fact with regard to when plaintiff and her husband knew facts that would have alerted a reasonable person to a substantial possibility that defendants were negligent in providing the infected blood. Bearing in mind the above discussion about the understanding in 1988 of the relationship between HIV and AIDS, it is far from clear that a person who tested positive for HIV in 1988 would be put on inquiry notice to discover any possible negligence in the transmission of HIV.

---

[7] By the same token, much is still not known. We would be ill-advised to set down broad rules of law, only to have them upset by the next advancement in medical science.

In the light of those factual issues, the trial court erred in ruling that, as a matter of law, plaintiff's claims were barred by the applicable statute of limitations.[8]

■ The trial court ruled, alternatively, that the claims were barred by the five-year statute of ultimate repose contained in ORS 12.110(4). As we explained above, ORS 12.110(4) is not applicable to these claims, because they do not arise out of medical treatment by defendants. Plaintiff's claims were filed within the ten-year statute of ultimate repose. ORS 12.115.

The record discloses genuine issues of material fact. The trial court erred by granting defendants' motion for summary judgment. In the light of that disposition, we need not address plaintiff's other assignment of error.

Reversed and remanded.

---

[8] We are aware of the practical problems that may be associated with application of statutes of limitations to claims for tortious transmission of HIV. *See Note*, "Standards of Conduct, Multiple Defendants, and Full Recovery of Damages in Tort Liability for the Transmission of Human Immunodeficiency Virus," 18 Hofstra LJ 37, 72-6 (1989). However, we are not at liberty to fashion a special statute of limitations applicable to such claims. That must be left to the legislature.