Argued and submitted March 7, 1995, decision of the Court of Appeals affirmed on different grounds; judgment of the circuit court vacated, and case remanded to the circuit court for further proceedings February 1, reconsideration denied March 6, 1996

Jane DOE,
Personal Representative of the Estate of John Doe,
and Jane Doe, individually,
*Respondents on Review,*

*v.*

AMERICAN RED CROSS
and Frans Peetoom,
*Petitioners on Review.*

(CC 9010-06734; CA A74444; SC S41493)

910 P2d 364

Fern P. O'Brian, of Arnold & Porter, Washington, D.C., argued the cause for petitioners on review. With her on the petition and briefs were Bruce M. Chadwick, Washington, D.C., and Ronald D. Lee, Los Angeles, and Darleen Darnall and Lisa E. Lear, of Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

Robert S. Sola, of Williams & Troutwine, P.C., Portland, argued the cause for respondents on review. With him on the briefs was Michael L. Williams.

Mildred J. Carmack, of Schwabe, Williamson & Wyatt, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

David F. Sugerman, of Paul & Sugerman, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Durham, Justices.**

VAN HOOMISSEN, J.

---

** Graber, J., did not participate in this decision.

## VAN HOOMISSEN, J.

Plaintiff Jane Doe brought this action as the personal representative of the estate of John Doe, her deceased husband, and individually, claiming damages for defendants' allegedly negligent transmission of Human Immunodeficiency Virus (HIV) to John Doe during surgery. Defendants are the American Red Cross (the Red Cross) and Dr. Frans Peetoom, who formerly was the Medical Director for the American Red Cross, Pacific Northwest Region Blood Services.

The circuit court granted defendants' motion for summary judgment on the ground that plaintiff's action was time-barred as a matter of law and entered judgment for defendants. The Court of Appeals reversed. *Doe v. American Red Cross*, 128 Or App 38, 46, 874 P2d 828 (1994). We allowed defendants' petition for review. The issue is when does the statute of limitation begin to run in a personal injury action for negligent transmission of HIV during surgery. For the reasons that follow, we affirm the decision of the Court of Appeals on different grounds.

On review of a summary judgment, we determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C. Defendants, as the moving party, have the burden of showing that there are no genuine issues of fact and that they are entitled to judgment as a matter of law. *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978). This applies even as to those issues on which the nonmoving party would have the burden at trial. *Welch v. Bancorp Management Advisors, Inc.*, 296 Or 208, 218-19, 675 P2d 172 (1983). In reviewing the trial court's ruling on a motion for summary judgment, we view the evidence and all reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmoving party, in this case plaintiff. *Gaston v. Parsons*, 318 Or 247, 251, 864 P2d 1319 (1994) (stating principle).

### FACTS

The following facts are undisputed or are drawn from plaintiff Jane Doe's deposition testimony.

In March 1985, Dr. Cook performed elective hip replacement surgery on John Doe, plaintiff's husband. During that surgery, John Doe was transfused with HIV-contaminated blood that had been collected and supplied by defendant the Red Cross.

In October 1987, Cook was informed by the Red Cross that the blood that John Doe had received from the Red Cross in 1985 may have been contaminated with HIV. Cook immediately contacted John Doe and advised him that the blood he had been transfused with in 1985 may have been contaminated with HIV. Cook instructed Doe to see Dr. Morita, who told the Does that same day that the blood Doe had received during his 1985 surgery may have been contaminated with HIV and that they both should be tested for HIV. Both were tested. Toward the end of October 1987, Morita notified John Doe that he had tested HIV-positive. The Does were "shocked" by that information. Plaintiff was "so terribly upset about the knowledge of this." The Does were "stunned" and were "in shock for a few weeks." At that time, the Does understood that HIV-infection could lead to AIDS and that John Doe was infected with a potentially serious condition that could result in serious illness or death. They also knew that the blood John Doe had received in 1985 was collected and supplied by the Red Cross.

After being informed by Morita that John Doe was HIV-positive, the Does "began to read voraciously everything that [they] could find" about HIV and AIDS. They did not contact a lawyer or otherwise pursue a claim against defendants at that time.[1]

In July 1988, Morita retested John Doe. Doe again tested HIV-positive. The Does still did not contact a lawyer or otherwise pursue a claim against defendants.[2]

---

[1] Plaintiff testified:

"Q: Did you feel that they — that there was an element of responsibility there or they could have done something more?

"A: No, we held the Red Cross in very high esteem; we had complete trust in them.

"Q: Did you —

"A: *We're not people who sue. We're not people who are vindictive. It didn't occur to us.*" (Emphasis added.)

[2] Plaintiff testified:

In 1990, John Doe was diagnosed with AIDS.

In October 1990, plaintiff received a telephone call from a friend in Seattle, informing her that someone in Seattle had won a case against the Red Cross for having supplied HIV-contaminated blood for a transfusion.[3] The day after the Does learned about the Seattle verdict, doctors informed them that John Doe's hip had become infected and that it would have to be removed. At that time, plaintiff became "truly angry" and contacted a lawyer.

On October 29, 1990, the Does filed the present action against the Red Cross, asserting claims for strict product liability, negligence, and loss of consortium.[4] In November 1990, they amended their complaint to add similar claims against defendant Peetoom. In August 1991, John Doe died of AIDS-related pneumonia. In October 1991, plaintiff filed a second amended complaint, adding allegations about John Doe's death, her appointment as personal representative of his estate, and claiming damages on account of his death.

Plaintiff's second amended complaint alleges that defendants were negligent in failing to screen blood donors

---

"Q: At the time that you received the confirmation retesting in July 1988, did at that point you think about hiring a lawyer or pursuing any kind of action against the Red Cross for the bad blood?

"A: Never.

"Q: Did you feel that there may be an element of responsibility on the part of the Red Cross?

"A: No."

[3] Plaintiff testified:

"Q: Was there any information that you received from any source that led you to believe that you either could or could not sue the Red Cross?

"A: It was that information that told me that there could have been responsibility on the part of the Red Cross or of the blood banks.

"Q: And before that time, the issue of legal responsibility had just never crossed your mind?

"A: It had never crossed our minds. We didn't consider it. We didn't discuss it."

The Does later learned that the Red Cross was not a defendant in the Seattle case.

[4] Plaintiff did not oppose defendants' motion for partial summary judgment on the claim for strict product liability. No issue concerning that claim is before us.

adequately, in failing to test blood for HIV, in failing properly to warn potential recipients of blood of the risk of HIV transmission, in failing to advise medical professionals and the public of the possibility of using autologous or directed donations of blood instead of anonymous donations, in failing to advise John Doe's physicians of the anticipated availability date of the then-new "HIV antibody test kits" so that elective surgery could have been postponed, in failing to halt all nonemergency transfusions, in failing to advise John Doe's physicians accurately of the prevalence of HIV in the Red Cross' blood supply, and in failing before 1987 to detect that John Doe had received HIV-infected blood.

Defendants moved for summary judgment, arguing first that the five-year statute of ultimate repose, ORS 12.110(4),[5] barred the action, because John Doe's injury was one "arising from medical [or] surgical * * * treatment, omission or operation." Defendants argued in the alternative that the two-year statute of limitations, ORS 12.110(1),[6] barred the action because the Does filed their original complaint more than two years after learning that John Doe was HIV-positive.

Plaintiff conceded on summary judgment that the Does knew in October 1987 that John Doe was HIV-positive, that his condition could lead to serious illness or death, and that his HIV-positive condition was the result of his having received contaminated blood collected and supplied by the

---

[5] ORS 12.110(4) provides:

"An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160 [suspension as to person under disability], every such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."

[6] ORS 12.110(1) provides:

"An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

Red Cross. It therefore has been established, as a matter of law, that the Does had actual knowledge in 1987 of their injury and of its cause.[7] She argued only that there remained a genuine issue of material fact as to whether they knew or should have known at that time that the Red Cross might have been negligent in supplying HIV-infected blood to John Doe.[8]

Plaintiff also argued that ORS 12.110(4) was not applicable, because John Doe's injuries did not arise from a "medical, surgical or dental treatment, omission or operation."

The trial court ruled that plaintiff's claim was barred by the statute of ultimate repose in ORS 12.110(4) and that, if ORS 12.110(4) was inapplicable, then her claim

---

[7] Plaintiff did not argue that defendants' conduct "masked" their alleged tortious conduct or that defendants made any assurances to the Does that have a bearing on whether a reasonable person would be aware of a substantial possibility of tortious conduct. *See Gaston*, 318 Or at 256-57 (certain untoward effects can "mask" tortious conduct; assurances may also have a bearing on awareness of tortious conduct).

[8] Plaintiff's response to defendants' motion for summary judgment states:

"For statute of limitations purposes, the general rule is that a plaintiff's cause of action does not accrue until she discovers or reasonably should discover an 'injury,' meaning that she realizes the following:

"1) that an injury has occurred,

"2) that the injury can be attributed to an act of the alleged tortfeasor, and

"3) that the act of the alleged tortfeasor was negligent.

"In this case, Mrs. Doe met the qualifications for the first two categories in October 1987 when she learned from Dr. Morita that her husband tested positive for HIV. She had sufficient facts to reasonably know that her husband had been harmed. A letter sent by the Red Cross to Dr. Peetoom provided sufficient facts to understand that the HIV infection was caused from blood provided for transfusion by defendants. However, *at that time*, neither Mr. or Mrs. Doe thought, or had any reason to think, that defendants had done anything *wrong* in supplying the blood." (Citation omitted; emphasis in original.)

In the trial court, plaintiff relied on the formulation of those elements found in *Hoffman v. Rockey*, 55 Or App 658, 639 P2d 1284 (1982). The third prong of the test in that case was described as "the act of the alleged tortfeasor was negligent." That differs slightly from this court's holding in *Gaston*, 318 Or at 255, that the third prong consists of "tortious," not necessarily "negligent," conduct. That distinction, however, is not relevant in the present case.

In her opening brief in the Court of Appeals, plaintiff states:

"By the end of October 1987, John Doe learned his blood tested positive for HIV. He knew the blood came from the Red Cross, but further inquiry and investigation did not demonstrate that the Red Cross was in any way negligent in failing to protect the blood supply."

was barred by the statute of limitations in ORS 12.110(1).[9] Accordingly, the trial court granted defendants' motion for summary judgment.[10]

■ On plaintiff's appeal, the Court of Appeals concluded that a person who provides a prepared product, such as blood, for general use in medical procedures, does not thereby undertake "medical treatment." *Doe*, 128 Or App at 44. We agree.[11] The court further concluded that, because plaintiff's claims did not arise from medical treatment within the meaning of ORS 12.110(4), the applicable statute of limitations is ORS 12.110(1). *Doe*, 128 Or App at 44.[12] The Court of Appeals then held that there remained genuine issues of material fact about whether a reasonable person would have been aware in 1988 of a substantial possibility that he had suffered harm when he was infected with HIV during surgery, and about when he knew facts that would have alerted a reasonable person to a substantial possibility that defendants had provided the contaminated blood negligently. *Id.* at 46.[13] In the light of those remaining factual

---

[9] The trial court's order states in part:

"1. Plaintiffs' claim is barred by the statute of ultimate repose contained in ORS 12.110(4), which applies to any action 'arising from any medical, surgical * * * treatment, omission or operation * * *.' Because the drawing of blood from the donor in February 1985 constituted medical or surgical treatment or operation by defendants, the five year statute of ultimate repose applies. Plaintiffs' action is time barred, as it was not filed by February 1990. Further, ORS 12.110(4) does not exclusively apply to treatment by defendant of the plaintiff but rather applies to 'any' treatment or operation by defendants.

"2. Even if ORS 12.110(4) is inapplicable in this case, the undisputed facts are that plaintiff had discovered the cause of action by the end of October 1987, and thus her claim is time barred under the applicable statute of limitations."

[10] The trial court's judgment was entered before this court decided *Gaston* in 1994.

[11] The present case is not an action to recover damages for injuries to the person "arising from any medical, [or] surgical * * * treatment, * * * or operation." ORS 12.110(4). Plaintiff does not allege that John Doe received medical treatment from defendants; nor does she make any claim that the medical treatment provided to John Doe was inadequate or tortious. Plaintiff's claim is governed by ORS 12.110(1).

[12] Defendants argue that the limitations and repose periods of ORS 12.110(4) apply. For purposes of application of the discovery rule, however, it makes no difference whether the *limitations* period under ORS 12.110(1) or (4) applies, because the limitations period under both sections is two years.

[13] The Court of Appeals questioned what a reasonable person would have understood in 1988, apparently because it considered relevant plaintiff's state of mind two years before filing the action in October 1990. Plaintiff had actual

issues, the court held that the circuit court had erred in ruling that plaintiff's claims were barred by ORS 12.110(1). *Id.* at 47.[14] We allowed defendants' petition for review.

Defendants contend that the Court of Appeals erred in reversing the circuit court's ruling that plaintiff's claims were barred. Defendants argue that the five-year statute of ultimate repose, ORS 12.110(4), barred plaintiff's action and, in the alternative, that the two-year statute of limitations, ORS 12.110(1), barred the action. Defendants argue that the Does had actual knowledge in October 1987 that John Doe had been seriously injured and that his injury was caused by the conduct of the Red Cross, and that that knowledge put them on inquiry notice of a substantial possibility that the Red Cross' conduct was tortious.[15]

In *Gaston*, this court stated:

"In light of the text and the context of ORS 12.110(4) and the legislative history of that provision, we hold that the legislature intended the word 'injury,' as used in ORS 12.110(4), to mean legally cognizable harm. In the tort context of ORS 12.110(4), a harm is legally cognizable if it is the result of tortious conduct. Therefore, 'injury,' as used in ORS 12.110(4), consists of three elements: (1) harm; (2) causation; and (3) tortious conduct." 318 Or at 255 (footnote omitted).

The court went on to explain:

"To discover a particular element of legally cognizable harm, the plaintiff does not need to know to certainty that each particular element exists. The discovery rule is

---

knowledge of John Doe's injury and its cause in 1987 and, therefore, the proper inquiry is what the Does knew or in the exercise of reasonable care should have known about the possibility of tortious conduct at that time.

[14] Plaintiff also argued to the Court of Appeals that the three-year wrongful death statute of limitations should be applied in this case. ORS 30.020. The Court of Appeals rejected that argument. Plaintiff has not petitioned for review with regard to that argument, and we do not consider it.

[15] Plaintiff argues for the first time in this court that HIV infection is not itself a harm, but merely a threat of future harm not yet realized, citing *U.S. Nat'l Bank of Oregon v. Davies*, 274 Or 663, 668, 548 P2d 966 (1976). Plaintiff did not argue to the Court of Appeals that there was an issue of fact as to when she and her husband knew that they had been harmed. Indeed, they could not properly have done so, because they conceded that issue at summary judgment. That issue, therefore, was not properly before the Court of Appeals; it was not preserved in the circuit court, nor raised in plaintiffs' opening brief in the Court of Appeals. We do not address it.

designed to give plaintiffs a reasonable opportunity to become aware of their claim. *See Frohs v. Greene,* [253 Or 1, 4, 452 P2d 564 (1969)] (discovery rule affords opportunity for plaintiff to discover that claim exists). Actual knowledge that each element is present is not required. On the other hand, a mere suspicion is insufficient to begin the statute of limitations to run. We believe that a quantum of awareness between the two extremes is contemplated by the statute. Therefore, the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) exists." *Id.* at 255-56.

The test involved in such circumstances is an objective one:

"In most cases, the inquiry will concern what a plaintiff should have known in the exercise of reasonable care. In such cases, the relevant inquiry is how a reasonable person of ordinary prudence would have acted in the same or similar situation. Relevant to this analysis will be a plaintiff's failure to make further inquiry if a reasonable person would have done so. The discovery rule does not protect those who sleep on their rights, but only those who, in exercising the diligence expected of a reasonable person, are unaware that they have suffered a legally cognizable harm." *Id.* at 256 (citation omitted).

The dispositive question in this case, therefore, is whether plaintiff and John Doe had notice that his HIV infection might have been caused by defendants' tortious conduct.

## ANALYSIS

■ Plaintiff conceded on summary judgment that the Does knew in October 1987 that John Doe was HIV-positive and that his condition could lead to serious illness or even death. In view of that concession, plaintiffs discovery of harm to John Doe has been established, as a matter of law, as of that time. We hold that the Court of Appeals erred in holding that there was a genuine issue of material fact about whether a reasonable person would have been aware of a substantial possibility that he had suffered harm when he was infected with HIV. Plaintiff also conceded on summary judgment that the Does knew in October 1987 that John Doe's HIV-positive condition was caused by the conduct of

the Red Cross. Plaintiff's knowledge of causation, therefore, has been established, as a matter of law, as of that time. Plaintiff never has argued otherwise.

■■ We now consider whether a genuine issue of material fact exists in this case as to plaintiff's knowledge of the possibility of defendants' "tortious conduct" — the third element of the discovery rule. *Gaston*, 318 Or at 256. The statute of limitations does not begin to run until a plaintiff is on notice of the defendant's "tortious conduct." *Id.*; *Frohs*, 253 Or at 7. Whether a reasonable person of ordinary prudence would be aware of a substantial possibility of tortious conduct is a question of fact that depends upon the nature of the harm suffered, the nature of the medical procedure, and other relevant circumstances. *Gaston*, 318 Or at 256. The nature of the harm suffered is important in determining whether a reasonable person would have been aware of a substantial possibility of tortious conduct. In many instances, suffering an untoward result after surgery may put a reasonable person on notice of tortious conduct. *Id.*

> "Normally, knowledge of injury as a result of defendants' actions would put the injured party on sufficient notice of defendants' tortious conduct to commence the running of the statute." *Frohs*, 253 Or at 7.

■ ■■ Although "tortious conduct" is an element of injury under the discovery rule, a plaintiff does not need to identify a particular theory of recovery before the statute of limitations begins to run. All that is required is that the plaintiff discover that some invasion of the legally protected interest at stake has occurred. For example, when a plaintiff discovers that he or she has been harmed wrongfully by the conduct of another, he or she need not further discover whether the defendant's act was intentional or negligent for the statute of limitations to begin to run. Discovery that the plaintiff's legally protected interest to be free from physical harm at the hands of another had been infringed is sufficient to satisfy the tortious conduct element of the discovery rule. *Id.* at 255 n 8.

Defendants have not argued that the Does had *actual* knowledge of a substantial possibility that defendants' conduct was tortious more than two years before plaintiffs commenced this action. Rather, they argue that, when the Does learned in October 1987 that John Doe had

been infected with contaminated blood collected and supplied by the Red Cross, they were on inquiry notice of a substantial possibility of tortious conduct on the part of the Red Cross.

Inquiry into the "tortious conduct" prong of the *Gaston* test usually is concerned with what a plaintiff knew or in the exercise of reasonable care should have known about the substantial possibility that the defendant had engaged in "tortious conduct." *Gaston*, 318 Or at 256. In this case plaintiff and decedent made no inquiry whatsoever into whether the Red Cross was negligent when it collected and provided HIV-contaminated blood to John Doe. The relevant inquiry, therefore, is how a reasonable person of ordinary prudence would have acted in the same or similar situation. *Id.* at 256.

On summary judgment, no party offered evidence on the issue of what a reasonable person would have learned in 1987 about the possibility that the Red Cross had been negligent.[16] Defendants relied mainly on *Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or 151, 163-64, 742 P2d 1176 (1987) ("The statute of limitations on a negligence claim * * * is not suspended until the plaintiff knows or should know of the defendant's culpability"; "[a]ccrual of a negligence claim does not await awareness of negligence").[17] As noted, at the time of the summary judgment hearing in this case, this court had not yet decided *Gaston*. The case law before *Gaston* was decided did not clearly recognize the existence of the third "tortious conduct" prong of the discovery rule.

*Gaston* holds that a defendant in a summary judgment motion must establish that the plaintiff knew or in the exercise of reasonable care should have known facts which would have made a reasonable person aware of a substantial possibility that each of the three elements (harm, causation,

---

[16] Defendants submitted numerous pleadings and decisions in other blood bank cases from the early 1980's regarding allegedly tortious transmission of blood-borne diseases by transfusions. Those documents, however, were not submitted as part of defendants' summary judgment motion. Rather, they were part of a motion on a discovery issue dealing with the confidentiality of blood donors' names.

[17] In *Gaston*, we stated that the holding in *Duyck* did not apply in the context of the discovery rule of ORS 12.110, because *Duyck*, a case of alleged negligent misrepresentation against a public body, was subject to the statute of limitations of ORS 30.275, and because the pertinent language in *Duyck* was *dicta. Gaston*, 318 Or at 258 n 11.

and tortious conduct) existed. *Gaston*, 318 Or at 256. In the ordinary case, that last element will appear as a matter of course. This, however, is not an ordinary case, because of the nascent state of the law and science with respect to HIV and AIDS at the pertinent time.

From the record that the parties made with respect to summary judgment, we conclude that plaintiff's knowledge in October 1987 of the harm caused to John Doe by HIV contaminated blood supplied by the Red Cross would have put plaintiff on inquiry notice of the existence of tortious conduct by defendants, as a matter of law. But the duty to inquire still left open the issue of what the Does would have learned *had they inquired*. That is, the existence of a duty to inquire does not foreclose the possibility of a factual dispute concerning the question of what the Does would have learned. Application of the discovery rule's "knew or should have known" standard makes the issue of what the Does "should have known" about the possibility of defendants' "tortious conduct" an issue of material fact.

Because no evidence was offered in connection with the motion for summary judgment that addressed the issue of what the Does would have learned had they made reasonable inquiry, the record does not permit an award of summary judgment to defendants. It follows that defendants were not entitled to summary judgment. The trial court's conclusion to the contrary was error, requiring reversal and remand for further proceedings.[18]

The decision of the Court of Appeals is affirmed on different grounds. The judgment of the circuit court is vacated. The case is remanded to the circuit court for further proceedings.

---

[18] With respect to the further proceedings in the trial court, nothing in this opinion should be construed as foreclosing a further effort by either party to resolve this case, as a matter of law, short of a full trial.