FILED: November 24, 2006



IN THE SUPREME COURT OF THE STATE OF OREGON



LAWRENCE KELLER
and PATRICIA KELLER,


Respondents on Review,

v.



ARMSTRONG WORLD INDUSTRIES, INC., et al, 


Defendants,


and



BORG-WARNER AUTOMOTIVE, INC.,
a Delaware corporation,
fka Borg-Warner Corporation,
individually and as successor-in-interest to
Borg-Warner Corporation - Borg & Beck Division,
and Borg-Warner Corporation - Rockford Clutch Division;



Defendant-Respondent,


and



TENNECO AUTOMOTIVE OPERATING COMPANY INC.,
a Delaware corporation,


Petitioner on Review.




(No. 0010-10816; CA A117518; SC S52801)



Appeal from the Court of Appeals.*



Argued and submitted September 7, 2006.



Thomas W. Sondag, Lane Powell, PC, Portland, argued the
cause and filed the brief for petitioner on review. 



James Coon, Swanson, Thomas & Coon, Portland, argued the
cause and filed the brief for respondents on review. With him on
the brief was Scott Niebling, Brayton Purcell LLP, Portland. 
Elaine J. Brown, Brayton Purcell LLP, Portland, filed the
response to the petition for review for respondents on review.



Before De Muniz, Chief Justice, and Carson, Gillette,
Durham, Balmer, and Kistler, Justices.**



KISTLER, J.




The decision of the Court of Appeals is affirmed. The
judgment of the circuit court is reversed, and the case is
remanded to the circuit court for further proceedings.



*Appeal from Multnomah County Circuit Court, John A. Wittmayer, Judge. 197 Or App 450, 107 P3d 29 (2005), on recons, 200 Or App
406, 115 P3d 247 (2005).



**Riggs, J., retired September 30, 2006, and did not
participate in the consideration or decision of this case. 
Walters, J., did not participate in the consideration or decision
of this case.



KISTLER, J.


In October 2000, plaintiff filed this product liability
action alleging that working with defendant's asbestos products
had damaged his lungs. (1) Defendant moved for summary
judgment, claiming that a two-year statute of limitations barred
plaintiff's claim. Defendant contended that plaintiff had known
of the possibility that asbestos was the cause of his pulmonary
problems since the mid-1980s and that plaintiff had referred to
his "asbestos lungs" when seeking social security disability and
workers' compensation benefits in 1994 and 1995.


The trial court granted defendant's motion, ruling as a
matter of law that plaintiff either had discovered or should have
discovered that asbestos had caused his pulmonary problems more
than two years before he filed this action. The Court of Appeals
reversed; it reasoned that a reasonable juror could find that
plaintiff neither had discovered nor should have discovered the
cause of his pulmonary problems earlier than he did. Keller v.
Armstrong World Industries, Inc., 197 Or App 450, 107 P3d 29,
adh'd to on recons, 200 Or App 406, 115 P3d 247 (2005). We
allowed review and now affirm the Court of Appeals decision.


Plaintiff worked as an automobile mechanic from 1960
until the mid-1970s, specializing in muffler and exhaust work. 
From the mid-1970s until 1987, plaintiff managed his own muffler
business. Defendant manufactured or supplied some of the
mufflers on which plaintiff worked; some of those mufflers were
wrapped in asbestos. As a result, plaintiff was exposed to
asbestos for many years, a fact that he became aware of by the
1970s.


In the mid-1980s, plaintiff began experiencing
respiratory problems. Beginning in 1986, plaintiff saw
Dr. Patterson, a pulmonologist, regarding those problems. During
their first visit, Patterson asked plaintiff about his work
environment. After plaintiff explained his history of working
with asbestos, Patterson performed a bronchoscopy that showed
mild interstitial fibrosis and anthracosis but no asbestos
bodies. Patterson diagnosed interstitial lung disease. (2) He
recommended that plaintiff "get out of the exhaust business,"
explaining that continued exposure to asbestos could be harmful. 
Plaintiff sold his muffler business shortly afterward and
purchased a building supply store.


In May 1991, a physician's assistant referred plaintiff
to another pulmonologist, Dr. Kintz, because of plaintiff's
continuing lung problems. After reviewing plaintiff's medical
history and contemporary test results, Kintz wrote to the
referring physician's assistant that he had a "suspicion [that
plaintiff] has mild pulmonary fibrosis, possibly related to
asbestos exposure." One month later, Kintz noted in plaintiff's
medical records that plaintiff suffered from "restrictive lung
disease related to prior asbestos or muffler fume exposure."


In late 1991, plaintiff applied for social security
disability benefits, stating that he had "lungs fibrous." In the
application, plaintiff reported that his condition prevented him
from doing his job and that he had stopped working on April 15,
1991. In response to a question on his work history, plaintiff
wrote that he "fe[lt] the prolonged exposure to exhaust fumes
dust & asbestos for so many years is to blame for my lung
condition."


In March 1992, plaintiff requested reconsideration of
his social security disability application, which the Social
Security Administration apparently had denied. In that document,
plaintiff stated that he had been to see another physician,
Dr. Musa, for an unrelated condition and that Musa had suggested
that he see Kintz again. Plaintiff explained that he went back
to see Kintz because of "decreasing lung function, [to] check on
disease progress, [and] black spots on lungs." (3)


In August 1992, plaintiff requested a hearing on his
disability claim, stating that his "lung condition" was worsening
and that he had seen Kintz in July. Plaintiff appears to have
contacted a lawyer regarding his disability claim because Kintz
wrote a letter to a lawyer three months later stating that, based
on studies done in June 1991 and July 1992, plaintiff "would
appear to meet the criteria for disability for patients with
pulmonary fibrosis based on his height." Kintz did not identify
the cause of plaintiff's pulmonary fibrosis.


In December 1993, plaintiff visited an emergency room
because of abdominal pain. The emergency room record states
that, in addition to abdominal pain and chronic back pain,
plaintiff "admits to lung problems and is being treated for
asbestosis."


Following plaintiff's visit to the emergency room, he
elected to undergo surgery in 1994 to repair an abdominal
aneurism. In March 1994, in preparation for that surgery,
Patterson wrote a preoperative evaluation stating that plaintiff
suffered from, among other things, "interstitial lung disease." 
Patterson observed that plaintiff's first five years of work
(from 1960 to 1965) involved "significant asbestos exposure" and
that plaintiff had "no other pertinent history as regards
interstitial lung disease." Patterson concluded, however, that
plaintiff's lung disease was of "uncertain" etiology. He noted
that a recent chest x-ray showed "a slight increase in basilar
markings which is relatively stable when compared to films over
the last few years" and that he saw no changes distinctively
characteristic of asbestos exposure.


In November 1994, plaintiff filed a second request to
reconsider his social security disability application. In that
request, plaintiff described his worsening back pain and lung
condition, which harmed his mental state and made him angry and
depressed. Plaintiff also described his aneurism surgery and his
family history of heart disease. Finally, plaintiff identified
Kintz as his "lung doctor" and stated:


"My lung doctor has told me to only do what my lungs
will allow me to do, which he stated because of my
asbestos lungs and psychological problems stem[m]ing
from my illness would not allow me to carry on my
regular work duties."



Later in the reconsideration request, plaintiff added:


"My asbestos lungs only get worse with time[;] most
patients get compl[ica]tions of cancer[.] Dr. Kintz &
Dr. Patterson have both informed me no treatment will
stop my lungs -- will just get worse."



In January 1995, plaintiff filed a workers'
compensation claim in which he stated that his "asbestos lung"
was caused by "exposure to asbestos from manufacturing and
installation of exhaust systems." In a separate document
entitled "Activities of Daily Living and Socialization,"
plaintiff explained that his back pain and "asbestos lungs"
rendered him unable to engage in any activities. (4)


In response to plaintiff's workers' compensation claim,
SAIF referred plaintiff to Dr. Smith. In April 1995, Smith sent
a letter to SAIF describing both the scope of his investigation
and his conclusions. After taking plaintiff's medical history,
reviewing the "available medical records" from plaintiff's
doctors, and conducting his own tests, Smith concluded that
plaintiff had "no asbestos related condition."


In reaching that conclusion, Smith determined that
plaintiff's work history represented, at most, a moderate
exposure to asbestos -- one not likely to have been "heavy enough
to cause asbestosis." Smith also determined that plaintiff's
medical history and tests showed "no evidence of asbestos-related
pleural disease or pleural thickening or pleural fibrosis. There
is no evidence of asbestos-related interstitial disease or
asbestosis."


On May 25, 1995, a claims adjuster from SAIF sent a
copy of Smith's report to Patterson, who checked a box stating
that he "agree[d] with all of Dr. Smith's report" and returned
the letter to the claims adjuster. On July 13, 1995, SAIF's
lawyer sent Kintz a copy of the lawyer's June 23, 1995, letter to
Smith and a copy of Smith's June 28, 1995, response. The cover
letter to Kintz notes that, during a telephone conversation,
Kintz had "agreed with Dr. Smith's comments, as stated in the
June 28, 1995, letter." Kintz also signed a statement to that
effect at the bottom of the cover letter, which he returned to
SAIF's lawyer. The record, however, does not include either the
lawyer's June 23, 1995, letter to Smith or Smith's June 28, 1995,
response.


On April 10, 2000, Dr. Schaumberg diagnosed plaintiff
as having "a[n] interstitial lung disease with a restrictive
pulmonary defect." (5) Schaumberg concluded that, "[g]iven
[plaintiff's] history of asbestos exposure, the most likely
etiology is because of asbestosis." Six months later, in October
2000, plaintiff filed this product liability action alleging that
his exposure to defendant's products had resulted in his
incurring an asbestos-related disease.


As noted, defendant moved for summary judgment, arguing
that plaintiff's product liability action was not timely. After
a hearing, the trial court entered an order granting defendant's
summary judgment motion and later entered judgment, pursuant to
ORCP 67 B, as to defendant. On appeal, a divided Court of
Appeals reversed. Keller, 197 Or App at 470. The majority
reasoned that, in light of the doctors' uncertainty as to the
cause of plaintiff's pulmonary problems, it could not say, as a
matter of law, that plaintiff either had discovered or should
have discovered more than two years before he filed this action
that asbestos was the cause of those problems. Id. at 466-67. 
The dissent reasoned that plaintiff had sufficient information to
cause him to undertake further inquiry than he did. Id. at 482
(Edmonds, J., dissenting). We allowed review to consider how ORS
30.907(1) applies to asbestos-related diseases.


ORS 30.907(1) defines when a product liability action
based on exposure to asbestos products must be commenced. It
provides:


"A product liability civil action for damages
resulting from asbestos-related disease shall be
commenced not later than two years after the date on
which the plaintiff first discovered, or in the
exercise of reasonable care should have discovered, the
disease and the cause thereof."


ORS 30.907(1). (6) In arguing that this statute bars
plaintiff's claim, defendant relies primarily on the contention
that plaintiff "actually discovered" the causal link between
asbestos and his lung disease as early as the 1980s and at the
latest by 1995, when plaintiff referred to his "asbestos lungs"
in filing for social security disability benefits and workers'
compensation. Alternatively, defendant argues that, at minimum,
plaintiff "should have discovered" the causal link between
asbestos and his pulmonary problems by 1995.


Defendant's arguments present two related but separate
questions. We begin with the question whether plaintiff actually
discovered, more than two years before he filed this action, that
he had an "asbestos-related disease" and "the cause thereof." In
the context of this case, that question does not entail complex
issues of statutory interpretation. Rather, it requires only
that we apply the plain words of the statute to the facts in the
summary judgment record; that is, the question is whether the
evidence in the summary judgment record requires, as a matter of
law, a determination that plaintiff had discovered, more than two
years before he filed this action, that he had an "asbestos-related disease" and "the cause thereof." See Jones v. General
Motors Corp., 325 Or 404, 420, 939 P2d 608 (1997) (stating
standard of review).


On that issue, we note that, by 1994, plaintiff's two
pulmonary doctors had diagnosed him as having "mild pulmonary
fibrosis" and "interstitial lung disease." (7) Neither doctor,
however, had diagnosed asbestos as the cause of those conditions;
at most, they recognized only that asbestos was a possible cause. 
Kintz had stated his "suspicion [that plaintiff] has mild
pulmonary fibrosis, possibly related to asbestos exposure." 
(Emphasis added.) Later, Kintz opined that exposure to either
asbestos or exhaust fumes was the cause of the fibrosis. Kintz,
however, did not determine which substance had caused that
condition. Similarly, in a 1994 preoperative report, Patterson
stated that the etiology of plaintiff's interstitial lung
condition was "uncertain." Finally, in evaluating plaintiff's
workers' compensation claim in 1995, Smith affirmatively
concluded that plaintiff's pulmonary problems had not resulted
from asbestos.


On this record, a reasonable juror could find that, in
light of the difficulty of determining whether asbestos or some
other agent (exhaust fumes, dust, or some other substance) was
the cause of plaintiff's pulmonary conditions, plaintiff lacked
the ability to discover the cause of those conditions without a
diagnosis from a medical professional. Cf. Uris v. Compensation
Deptartment, 247 Or 420, 424-26, 427 P2d 753, 430 P2d 861 (1967)
(holding that, except for "uncomplicated situation[s]," expert
testimony is generally necessary to establish medical causation). 
A reasonable juror also could find that, because no doctor had
diagnosed asbestos as the cause of plaintiff's pulmonary
condition before Schaumberg did so in April 2000, plaintiff did
not actually discover the cause of his lung disease until he
received Schaumberg's diagnosis.


Defendant, however, argues that the evidence compels a
different conclusion. The evidence on which defendant relies
falls into two groups. First, defendant relies on evidence that
plaintiff knew, by the mid-1990s at the latest, that he had been
exposed to asbestos, that he had pulmonary problems, and that
asbestos was a possible cause of those problems. Defendant thus
notes that Kintz had concluded that plaintiff had "restrictive
lung disease related to prior asbestos or muffler fume exposure." 
(Emphasis added.) Similarly, defendant relies on plaintiff's
statement in 1991 that, "I feel that the prolonged exposure to
exhaust fumes dust & asbestos for so many years is to blame for
my lung condition." That evidence, however, identifies asbestos
as only one of several possible causes of plaintiff's condition. 
A reasonable juror could infer from that evidence that, at most,
plaintiff was aware that asbestos might be the cause of his
pulmonary problems. Put differently, the evidence does not
require a reasonable juror to find that defendant actually
discovered that asbestos, in fact, had caused his pulmonary
conditions.


Defendant raises a second argument. He notes that, in
seeking social security disability benefits in 1994, plaintiff
attributed a diagnosis of "asbestos lungs" to his pulmonary
doctors. It also notes that, in applying for workers'
compensation benefits in 1995, plaintiff described the nature of
his work-related occupational disease as "asbestos lung." 
Defendant argues that the only permissible inference from those
statements is that plaintiff had received a diagnosis of
"asbestos lung" from at least one of his pulmonary doctors -- a
diagnosis that, defendant contends, necessarily demonstrates that
plaintiff had discovered by 1995 that asbestos was the cause of
his pulmonary disease. (8)


The difficulty with defendant's argument is that, on
this record, a reasonable juror could find that no doctor had
diagnosed plaintiff's pulmonary disease as "asbestos lung" by
1995. More specifically, a reasonable juror could find that,
after plaintiff filed for workers' compensation in 1995, Smith
undertook a comprehensive review of all plaintiff's available
medical records. Although Smith discussed Patterson and Kintz's
treatment in his letter to SAIF, Smith did not note that either
Patterson or Kintz had diagnosed asbestos as causing plaintiff's
pulmonary disease. Indeed, Smith concluded that plaintiff "has
no asbestos related condition," and Patterson agreed with that
conclusion.


Given the comprehensive nature of Smith's review of
plaintiff's medical history, a reasonable juror could find that,
up to the time that Smith conducted his review, no doctor had
diagnosed asbestos as the cause of plaintiff's pulmonary
problems. (9) It follows that a reasonable juror also could
find that plaintiff's references to his "asbestos lungs" did not
reflect a medical diagnosis; rather, the references reflected
either plaintiff's misperception of what his doctors had told him
or his exaggeration of their diagnoses as part of an effort to
demonstrate either to the Social Security Administration that he
truly was disabled or to his workers' compensation insurer that
his disease truly was work-related.


To be sure, a reasonable juror could find that
plaintiff had received a diagnosis of "asbestos lungs" of which
Smith was not aware. The point, however, is that the record does
not compel that inference. On this record, we agree with the
Court of Appeals that a reasonable juror could conclude that
plaintiff's statements reflected nothing more than his own
supposition. Plaintiff's own supposition, uninformed by any
medical diagnosis that asbestos had caused his respiratory
problems, is not sufficient to establish actual discovery of that
fact. 


The remaining issue is whether plaintiff "in the
exercise of reasonable care should have discovered" that he had
an asbestos-related disease and the cause thereof more than two
years before he filed this action. On that issue, defendant
contends that the Court of Appeals erred in interpreting the
quoted phrase in ORS 30.907(1), while plaintiff argues that we
should interpret the phrase in light of the unique nature of
asbestos-related diseases.


The text of ORS 30.907(1) states a familiar standard;
it provides that the statute of limitations begins to run when a
plaintiff "in the exercise of reasonable care should have
discovered" the disease and the cause thereof. This court has
construed virtually the same phrase numerous times in
interpreting another statute of limitation. See, e.g., Greene v.
Legacy Emanuel Hospital, 335 Or 115, 60 P3d 535 (2002)
(construing ORS 12.110(4), pertaining to claims arising from
medical treatment); Doe v. American Red Cross, 322 Or 502, 910
P2d 364 (1996) (same); Gaston v. Parsons, 318 Or 247, 864 P2d
1319 (1994) (same). We perceive no reason why this court's
interpretation of that phrase in ORS 12.110(4) does not provide
relevant context in interpreting the same phrase in ORS
30.907(1); that is, we are not aware of any reason in the text,
context, or legislative history of ORS 30.907(1) to interpret the
two phrases differently. (10) Accordingly, we look to the
decisions in Gaston, Doe, and Greene in interpreting and applying
ORS 30.907(1).


Because an understanding of those three cases is
helpful to applying the statutory standard, we describe them
briefly before applying that standard to this case. In Gaston,
this court considered ORS 12.110(4), the statute of limitations
for claims arising from medical treatment. That statute required
claims to be "commenced within two years from the date when the
injury is first discovered or in the exercise of reasonable care
should have been discovered." See id. at 251-52 (quoting
statute). (11) In interpreting the phrase "in the exercise of
reasonable care should have been discovered," the court
explained:


"Actual knowledge * * * is not required. On the other
hand, a mere suspicion is insufficient to begin the
statute of limitations to run. We believe that a
quantum of awareness between the two extremes is
contemplated by the statute."



Id. at 256. The court also explained that the question whether a
plaintiff "in the exercise of reasonable care should have"
discovered an injury is an objective one. Id.


The court was careful to make clear that the question
whether the plaintiff should have discovered that he or she had
an injury turns, in the context of a medical malpractice claim,
on the nature of the harm suffered, the nature of the medical
procedure, and other relevant circumstances. Id. Accordingly,
the court explained in Gaston that the fact that the plaintiff
experienced numbness and a loss of function in his left arm after
surgery was insufficient, on the facts of that case, to require a
finding that the statute of limitations had begun to run. Id. at
258. In reaching that conclusion, the court noted both the
doctor's assurances that the plaintiff's symptoms were temporary
and the fact that the symptoms were not "so clearly unrelated to
the procedure performed" that a reasonable person necessarily
would have understood that they resulted from the doctor's
malpractice. Id.


The court returned to the question in Doe. In that
case, the plaintiff learned that he was HIV positive as a result
of a transfusion of blood that the Red Cross had supplied. 322
Or at 506. The plaintiff thus was aware of two elements of
"injury" -- harm and causation. Id. at 508-09 He contended,
however, that he neither had discovered nor reasonably should
have discovered the third element -- tortious conduct -- until
some time later. Id. at 509. In resolving that issue, the court
explained that, given the plaintiff's knowledge that he was HIV
positive as a result of the transfusion, a reasonable person
would have inquired whether the Red Cross had acted tortiously. 
322 Or at 515. The court observed, however, that there was no
evidence as to what the plaintiff would have learned if he had
inquired. Id. Without that evidence, the court held that
summary judgment was not appropriate. Id.


Finally, in Greene, the court explained that the phrase
"inquiry notice," which it had used in Doe, obscured rather than
advanced the analysis. 335 Or at 123. The court clarified the
relevant standard:


"The period of limitations in [ORS 12.110(4)] commences
from the earlier of two possible events: (1) the date
of the plaintiff's actual discovery of injury; or
(2) the date when a person exercising reasonable care
should have discovered the injury, including learning
facts that an inquiry would have disclosed. In neither
of those circumstances does the period of limitations
begin to run from the plaintiff's discovery of facts
that serve only to trigger a duty to inquire about
whether an injury has occurred. Even if a plaintiff
acquires information about a surgical complication that
only would cause a reasonable person to inquire whether
legally cognizable harm has occurred, the period of
limitations would commence at some later point when,
after inquiry, the facts reasonably should disclose the
existence of an actionable injury."



Id. (emphasis deleted). As in Gaston, the court was careful to
consider the particular facts of the case in determining whether
it could hold, as a matter of law, that the plaintiff in the
exercise of reasonable care should have discovered the existence
of an actionable injury.


The decisions in Gaston and Greene teach that, in
applying ORS 30.907(1), the question whether plaintiff, in the
exercise of reasonable care, should have discovered that he had
an "asbestos-related disease" and "the cause thereof" will turn,
among other things, on the evidence regarding the nature of that
disease, the degree to which the disease remains latent after
exposure, and the difficulty in diagnosing asbestos as the cause
of plaintiff's conditions. Turning to that inquiry, we note that
the evidence in this case falls into two time periods.


From 1986 to 1995, plaintiff repeatedly sought
treatment for his pulmonary problems. Plaintiff did not sleep on
his rights during that period or fail to inquire about the cause
of his pulmonary problems. Rather, as explained above, a
reasonable juror could find that plaintiff had engaged in a
reasonable inquiry; he repeatedly sought medical treatment for
his pulmonary problems. His doctors, however, did not diagnose
him during that period as having an asbestos-related disease. A
reasonable juror could find that, if plaintiff's doctors could
not identify asbestos as the cause of his pulmonary disease,
plaintiff was not unreasonable in failing to discover what his
doctors could not.


The period from 1995 to 2000 presents a different
issue. The record does not disclose that plaintiff sought any
treatment during that period until Schaumberg diagnosed him with
an asbestos-related disease in 2000. The record, however, also
does not disclose that plaintiff suffered any change in his
symptoms during that period, and a reasonable juror could find on
this record that nothing occurred during that period to cause
plaintiff to seek additional medical advice. (12) 
Alternatively, even if a reasonable person would have continued
to inquire after 1995, the record does not disclose what a
further inquiry would have revealed. In that respect, this case
is no different from Doe. Without evidence of what plaintiff
would have learned if he had inquired, we cannot say that he
should have discovered that he had an asbestos-related disease
more than two years before he brought this action. See Doe, 322
Or at 515 (holding that, without any evidence as to what Doe
would have discovered if he had inquired, defendant was not
entitled to summary judgment on its statute of limitations
defense).


The Court of Appeals correctly held that, on this
record, a reasonable juror could find that plaintiff neither
actually discovered nor, in the exercise of reasonable care,
should have discovered that he had an asbestos-related disease
until April 2000. It follows that defendant was not entitled to
summary judgment on its statute of limitations defense.


The decision of the Court of Appeals is affirmed. The
judgment of the circuit court is reversed, and the case is
remanded to the circuit court for further proceedings.






1. Plaintiffs Lawrence and Patricia Keller brought this
action against several defendants. We refer to Lawrence Keller
as plaintiff. Only defendant Tenneco Automotive Operating
Company, Inc., seeks review of the Court of Appeals decision, and
we refer to it as defendant. 

Return to previous location.



2. The record reflects medical diagnoses of "interstitial
lung disease" and "pulmonary fibrosis." The record does not
contain any evidence explaining either the nature of or the
potential causes of those conditions. The record permits the
inference, however, that those conditions may result from
exposure to several substances, one of which is asbestos.

Return to previous location.



3. The record includes a document captioned "Development
Worksheet." The worksheet is a compilation of medical events
that occurred from May 29, 1991 to June 9, 1993. One event,
dated May 28, 1992, states that someone (presumably plaintiff)
suffers from "lung interstitial fibrosis from Dx of asbestosis." 
The worksheet does not indicate who compiled the information, the
reason for compiling the information, or the source of the
information. Although defendant refers once to the worksheet in
its statement of facts, it does not rely on it in arguing that
plaintiff's claim is time barred.

Return to previous location.



4. Plaintiff stated:



"Because of my asbestos lungs, degenerative spine
disease, which the doctors have told me nothing can be
done to correct my problem, the only alternative is
being sent to Oregon medical school for implant in
back, to help control pain."



Although the quoted sentence is not completely clear, the
dependent clause appears to modify "degenerative spine disease"
rather than "asbestos lungs."

Return to previous location.



5. Defendant appears to argue that plaintiff may not rely
on Schaumberg's letter because it was part of another summary
judgment motion in this case. ORCP 47 C, however, recognizes
that a trial court may consider "the pleadings, depositions,
affidavits, declarations and admissions on file" in determining
whether to enter summary judgment. That wording is broad enough
to permit the court to consider not only the evidence submitted
in support of and opposition to the summary judgment motion but
also other pleadings and evidence "on file." See Charles Alan
Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice
and Procedure § 2721, 366 (3d ed 1998) (discussing federal
analogue to ORCP 47 C).

Return to previous location.



6. ORS 30.905(2)(b) provides that, unless another statute
provides an exception, a product liability action must be brought
no more than 10 years "after the date on which the product was
first purchased." ORS 30.907 is an exception to that statute. 
See ORS 30.905(2) (so stating); Gladhart v. Oregon Vineyard
Supply Co., 332 Or 226, 232, 26 P3d 817 (2001) (same).

Return to previous location.



7. The record does not reveal whether those two diagnoses
are different terms for a single condition or whether they
reflect two separate diseases of the lungs; that is, no expert
testimony reveals the relationship between the two diagnoses.

Return to previous location.



8. Because Patterson stated in 1994 that the etiology of
plaintiff's interstitial lung disease was uncertain, defendant's
argument presumably rests on the contention that Kintz had
diagnosed asbestos as the cause of plaintiff's lung condition
some time between 1992 and 1994. 

Return to previous location.



9. We note, as the Court of Appeals did, that this is not
a case in which plaintiff had received conflicting medical
diagnoses -- one identifying asbestos as the cause of his
pulmonary conditions and another identifying a different cause. 
Rather, this is a case in which a reasonable juror could find
that no doctor had concluded that plaintiff had an asbestos-related disease.

Return to previous location.



10. We note that ORS 30.907(1) differs from ORS 12.110(4)
in one respect. ORS 30.907(1) refers to discovering an
"asbestos-related disease" and "the cause thereof" while ORS
12.110(4) refers to discovering an "injury." However, both
statutes use virtually the same phrase -- "in the exercise of
reasonable care should have discovered" -- to describe the
minimum level of knowledge that a plaintiff must have in order
for the statute of limitations to begin to run. 

Return to previous location.



11. We note that ORS 12.110(4) refers to discovery of an
"injury," which Gaston held consists of three elements: (1)
harm; (2) causation; and (3) tortious conduct. 318 Or at 255. 
ORS 30.907(1), by contrast, refers to discovery of an "asbestos-related disease" and "the cause thereof." Although the phrase --
in the exercise of reasonable care should have discovered -- is
virtually the same in both statutes, the legislature used
different terms to describe what a plaintiff should have
discovered.

Return to previous location.



12. Because the statute of limitations is an affirmative
defense, defendant has the burden of persuasion on that issue at
trial. See Nelson v. Hughes, 290 Or 653, 664-65, 625 P2d 643
(1981) (stating proposition). On summary judgment, a party has
the burden to produce evidence on an issue as to which it has the
burden of persuasion at trial. ORCP 47 C. It follows that, if
no evidence exists on an issue of fact that is material to
defendant's statute of limitations argument, that omission
defeats that argument.

Return to previous location.