Argued and submitted February 13, 1981, reversed and
remanded January 25, reconsideration denied February 25,
petition for review denied March 16, 1982 (292 Or 722)

HOFFMAN,<br>
<em>Appellant,</em><br>
<em>v.</em><br>
ROCKEY,<br>
<em>Respondent.</em>

(No. 16-79-02047, CA 17403)

639 P2d 1284

J. Michael Alexander, Salem, argued the cause for appellant. With him on the brief was Brown, Burt, Swanson & Lathen, P.C., Salem.

Randall Bryson, Eugene, argued the cause for respondent. With him on the brief were Bryson & Bryson, Eugene, and Calkins & Calkins, Eugene.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff appeals from a judgment for defendant in this action to recover damages for medical malpractice. He assigns as error the trial court's failure to give a requested jury instruction and its directing of a verdict in defendant's favor as to one of plaintiff's allegations of negligence.

Defendant, an orthopedic surgeon, performed an osteotomy[1] on plaintiff's lower right leg on December 15, 1974. Shortly after the surgery the leg became infected. A metal plate which had been implanted during the osteotomy was removed on June 25, 1975, because, due to the infection, the bone was not uniting. Plaintiff testified that, although the infection and the nonunion of his bone persisted, defendant assured him that the leg was progressing. In April, 1977, defendant referred plaintiff to other orthopedic surgeons for consultation. They recommended amputation. In the fall of 1979, defendant's right leg was amputated below the knee.

Plaintiff filed his complaint on March 2, 1979. His 17 specifications of negligence were reduced to three during trial: (1) failure to warn him of the risk of infection and nonunion of the bone from the osteotomy;[2] (2) failure to perform the osteotomy properly; and (3) failure to treat plaintiff's infection properly with antibiotics.[3]

Defendant interposed the affirmative defense that plaintiff's action was not commenced within the time limited by statute. ORS 12.110(4).[4] On defendant's motion,

---

[1] In plaintiff's osteotomy the tibia was cut or "rebroken" and then realigned and held in place with a metal plate and screws.

[2] Plaintiff's complaint was amended to conform to the proof.

[3] Although plaintiff contends that defendant's assurances caused plaintiff to fail to perceive the severity and permanence of his injury and the inadequacy of care, plaintiff did not contend that he had a cause of action based on fraud or concealment.

[4] ORS 12.110(4) provides:

"An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160, every such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action

made after plaintiff rested his case, the trial court directed a verdict as to plaintiff's allegation that defendant failed to warn plaintiff of the risks of infection and nonunion. The ruling was based on the statute of limitations. The trial court reasoned:

> " * * * [T]he evidence is clear and is uncontradicted, that the plaintiff discovered the infection within a day or two after the operation. And as I read the law, we've got the issue of failure to warn. Failure to warn is the alleged negligence. As soon as what was supposed to be warned against occurs, we've got the injury. Your statute's going to run. * * * As to the nonunion, it's essentially the same. The evidence, again, is uncontradicted as far as I can see, and perfectly plain, that the very latest by the time the plate was removed from the defendant's leg, it was clear to everyone, including him, that there was a nonunion."

The trial court concluded that it was a question of fact for the jury's determination as to whether the statute of limitations had run as to plaintiff's other claims of negligence.

The trial court refused to give plaintiff's requested jury instruction on the statute of limitations:

> "In considering when the plaintiff, Mr. Hoffman, should have discovered the negligence of the defendant, Dr. Rockey, you should remember that the statute of limitations does not begin to run until the harm has occurred and it appears reasonably probable that the damage complained of was caused by the negligence of the defendant, and not by some other cause."

Instead, the trial court gave an instruction in the language of ORS 12.110(4):

> "The pertinent statute in this case requires '(a)n action to recover damages for injuries arising from medical (or) . . . surgical treatment. . .' to be '. . . commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered.'
>
> "It is a question for you to decide in this case whether prior to March 2, 1977, Mr. Hoffman discovered, or in the

commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."

exercise of reasonable care should have discovered, any injury or injuries he is claiming in this case."

The jury returned a general verdict for defendant.

Plaintiff contends that his requested jury instruction is accurate and correctly states the law and that it was error to refuse to give it. Defendant disagrees, contending in his brief that the statute of limitations began to run when "the plaintiff learned or should have learned of his injury and that it was probably caused by the defendants [sic], not by the *negligence* of the defendants [sic]." (Emphasis defendant's.) Defendant argues that the requested instruction was erroneous, incomplete and misleading, because it introduced the notion of negligence and because it failed to direct the jury to an objective standard of discovery, rather than to a subjective standard.

ORS 12.110(4) relates specifically to medical malpractice claims and was enacted in 1967. It has since been interpreted to apply to other professional malpractice claims. It codifies the "discovery" rationale that had been developed by case law beginning with *Berry v. Branner,* 245 Or 307, 421 P2d 996 (1966). *See e.g., Josephs v. Burns and Bear,* 260 Or 493, 491 P2d 203 (1971). In *Berry,* the court reasoned:

> "* * * The cause of action must necessarily accrue to some person or legal entity. To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any *wrong* inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one. To say to one who has been wronged, 'you had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy,' makes a mockery of the law. * * *" 245 Or at 312. (Emphasis added.)

The court held that the cause of action "accrued at the time plaintiff obtained knowledge, or reasonably should have obtained knowledge of *the tort* committed upon her person by defendant." 245 Or at 315-316. (Emphasis added.) Similarly, in *Frohs v. Greene,* 253 Or 1, 452 P2d 564 (1969), the court held that the statute of limitations began to run from the time plaintiff

should have discovered that she had a cause of action. 253 Or at 6.

■ A plaintiff should discover that he has a cause of action when he realizes (1) that he has been injured, (2) that the injury can be attributed to an act of the alleged tortfeasor, and (3) that the act of the alleged tortfeasor was somehow negligent. We do not suggest that a plaintiff in a malpractice case can never reasonably determine that he has a cause of action without consulting a doctor or a lawyer. A reasonable person may well conclude, before receiving any expert opinion, that he has been injured and that the injury was caused by a negligent act or omission of the alleged tortfeasor. In this case, it was not until April, 1977, that plaintiff, after consultation with other doctors, discovered that his right leg would not heal. In *Melgard v. Hanna,* 45 Or App 133, 136, 607 P2d 795 (1980), a professional malpractice case also involving the discovery rationale for the commencement of the statute of limitations, the court stated the applicable rule as follows:[5]

> "The statute [ORS 12.110(1)] does not commence to run until the occurrence of the harm and until such time as it appears reasonably probable that the damage complained of was caused by the *negligence* of defendants and not by some other cause." (Emphasis added.)

■ We hold that the requested instruction was neither misleading nor incorrect. Also, the use of the phrase "reasonably probable" was sufficient to insure that the jury was directed to an objective standard. The instruction that was given was clearly inadequate to inform the jury of the proper method for determining whether the statute of limitations had run. Plaintiff's requested instruction, and his counsel's exception to the trial court's refusal to give it, "clearly and directly" called the error to the attention of the trial court. *Roberts v. Mitchell Bros.,* 289 Or 119, 131, 611 P2d 282 (1980); *Sculace v. Rogers,* 49 Or App 433, 439, 619 P2d 1316 (1980). The trial court erred in not giving the requested instruction, and the error requires reversal.

---

[5] *Melgard v. Hanna,* 45 Or App 133, 607 P2d 795 (1980), dealt with an action for malpractice against an attorney, hence the applicable statute for limitations was ORS 12.110(1). Although limitations for medical malpractice actions are governed by ORS 12.110(4), the rule stated by the court is applicable to both subsections.

■ Plaintiff's other assignment of error is that the trial court erred in directing a verdict in defendant's favor on plaintiff's allegation of negligence in failing to warn plaintiff properly of the risks involved in the osteotomy of infection and failure of the bone to reunite.[6] Plaintiff contends that whether he discovered defendant's negligence was a question of fact for the jury, because plaintiff could have considered his injuries as "only transitory," and that, furthermore, the "continuous treatment" rule would apply to extend the statutory limitation period.

The assignment is not well taken. Plaintiff testified that he had known of the infection shortly after the surgery and also that by June 25, 1975, he knew his leg had failed to join. As the trial court pointed out, plaintiff's discovery was complete when he perceived his difficulties and knew that his doctor had failed to warn him of these particular problems — permanent or not. Furthermore, defendant's failure to warn does not provide a basis for the application of the continuing treatment doctrine.[7] Even if we assume that the continuing treatment doctrine is still viable, a physician's failure to warn of possible consequences is not a continuing tort. Defendant's negligent act as alleged was complete upon his failure to give plaintiff adequate information prior to the surgery.

Reversed and remanded.

---

[6] We do not hold that these are the only possible risks which a jury might find to fall within a physician's duty to warn a patient, but they are the only ones pleaded in this case.

[7] The continuous treatment doctrine provides that where a physician's continuing treatment constitutes a continuing tort, the statute of limitations starts running when the treatment ceases. *See Shives v. Chamberlain,* 168 Or 676, 685, 126 P2d 28 (1942).