Argued and submitted July 8, 1991; resubmitted In Banc July 1, affirmed
September 16, reconsideration denied December 9, 1992, petition for review
denied February 23, 1993 (315 Or 442)

Jody I. RAETHKE,
*Appellant,*

*v.*

OREGON HEALTH SCIENCES UNIVERSITY,
*Respondent.*

(8906-03222; CA A65364)

837 P2d 977

Gordon T. Carey, Jr., Portland, argued the cause and filed the briefs for appellant.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

BUTTLER, J.

Rossman, J., dissenting.

## BUTTLER, J.

Plaintiff appeals a summary judgment for defendant, a public body, in this action for medical malpractice. The sole issue is whether she gave timely notice of claim under ORS 30.275.[1]

In January, 1985, several weeks after plaintiff had given birth, she was a patient at defendant Oregon Health Sciences University. A doctor at the University performed an emergency dilation and curettage (D & C) to remedy severe uterine bleeding. During the next two years, plaintiff and her husband attempted to conceive another child, but were unsuccessful. Plaintiff consulted Dr. Hanschka to determine whether there were any medical reasons for her inability to become pregnant. In February, 1987, Hanschka ordered a hysterosalpingogram, which showed abnormal structures in her uterus. He informed her that he did not know whether the abnormalities were congenital and recommended further diagnostic procedures.

A few weeks later, plaintiff consulted Dr. Dishman, who performed additional tests and discovered that one of plaintiff's Fallopian tubes was inside her uterus, acting as a natural intrauterine device that prevented implantation of fertilized eggs. He explained the condition to plaintiff and advised her that it would have to be removed before she could become pregnant. Dishman told her that he believed that the problem might have been caused by the D & C in 1985. Plaintiff expressed concern that, without both Fallopian tubes, her chances of becoming pregnant would decrease. Dishman explained that the remaining tube would carry ova from both ovaries, completely compensating for the removed tube.

Surgery was performed on July 20, 1987, after which plaintiff was informed that "there was no reason why" she should not be able to have another child. For the next year and a half, she attempted unsuccessfully to become pregnant.

---

[1] ORS 30.275 provides:

"(2) Notice of claim shall be given within the following applicable period of time
* * *:

"(a) For wrongful death, within one year after the alleged loss or injury.

"(b) For all other claims, within 180 days after the alleged loss or injury."

In January, 1989, Dishman performed another hyster-osalpingogram, after which he concluded that plaintiff "may be permanently infertile." He so informed her on February 6, 1989. On June 8, 1989, 122 days after she learned that she might be permanently infertile, she filed a notice of claim with defendant; on the next day, she filed her complaint. Defendant moved for summary judgment, asserting that the Statute of Limitations had run, because the claim had accrued in early 1987, when plaintiff had learned that she had been injured and that defendant's negligence was probably the cause. Plaintiff assigns error to the granting of that motion.

■      We view the record in the light most favorable to plaintiff, giving her the benefit of all reasonable inferences of fact. As the moving party, defendant must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Seeborg v. General Motors Corp.*, 284 Or 695, 699, 588 P2d 1100 (1978).

■      A cause of action for personal injury accrues from the date the injury is, or should have been, discovered, not from the time the full extent of damages is ascertained. *Guiley v. Hammaker*, 55 Or App 921, 640 P2d 664, *rev den* 292 Or 863 (1982). Discovery occurs when a plaintiff is or should be aware of (1) the injury, (2) the cause of the injury and (3) the identity of the tortfeasor. *Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or 151, 742 P2d 1176 (1987).

The question is when did plaintiff discover her injury. She acknowledges that, in June, 1987, she learned that the surgery performed by defendant's agents in defendant's hospital in January, 1985, had caused one of her Fallopian tubes to be displaced inside her uterus. She was advised that that condition was the probable cause of her inability to become pregnant and that the condition probably could be cured by a surgical procedure, which was performed. Plaintiff knew then that she had been injured by the surgery performed at defendant's facility, although she did not know the full extent of the injury. She understood that Dishman, who had diagnosed her condition and performed the second surgery, considered defendant's performance of the 1985 surgery to be "malpractice." She says that she did not pursue her claim at that time, because she thought that she was only

"temporarily infertile" and that the second surgical procedure would cure that condition. She argues that a separate and distinct claim accrued in January, 1989, when she learned that she was permanently infertile.

■■     The cases are clear, however, that one may not avoid the Statute of Limitations by characterizing the harm as two different kinds of injuries rather than one injury that has caused more damage than was originally contemplated. There is no significant difference between this case and *Gannon v. Rogue Valley Medical Center*, 92 Or App 314, 758 P2d 873, *rev den* 307 Or 145 (1988). In that case, the plaintiff had contracted meningitis as a result of the defendant's failure properly to perform a myelogram. She took no action when she learned that the defendant's negligence had caused her meningitis, because she recovered from it and believed that her injuries were not serious enough to file a lawsuit. Later, she developed organic brain syndrome as a result of the meningitis. We held that her cause of action had accrued when she learned that the defendant had caused her meningitis, not when she developed organic brain syndrome; therefore, it was barred by the Statute of Limitations.

Similarly, in *Guiley v. Hammaker*, 55 Or App 921, 640 P2d 664, *rev den* 292 Or 863 (1982), a 14-day-old child suffered what appeared to be only a minor abrasion from an automobile accident, but 7 years later learned that that accident had probably been the cause of damage to his optic nerve. We held that the plaintiff's cause of action had accrued at the time of the accident, because he knew then that he had been injured and that the accident was attributable to the negligence of the defendant. The fact that he initially thought that his injury was only minor did not mean that a new cause of action accrued when he later learned that he had suffered an unanticipated kind of harm. So, too, in *Hoffman v. Rockey*, 55 Or App 658, 639 P2d 1284 (1982), we held that the plaintiff knew that he was harmed when he had an infection in his leg shortly after surgery; he did not have a new cause of action when he learned that his leg would have to be amputated. "[P]laintiff's discovery was complete when he perceived his difficulties and knew that his doctor had failed to warn him of these particular problems—*permanent or not*." 55 Or App at 664. (Emphasis supplied.)

That plaintiff thought her condition could be corrected until 1989 does not help her. In *Jaquith v. Ferris*, 297 Or 783, 687 P2d 1083 (1984), the plaintiff had relied on her realtor's valuation when she signed an earnest money agreement in December, 1977, to sell property to Jones for $164,325. In May, 1978, she learned that the property was worth $400,000 and refused to proceed with the sale. Jones ultimately prevailed in his action for specific performance when the Supreme Court denied review of our decision in his favor. The plaintiff then sued the realtor, Ferris. The court held that the plaintiff's cause of action against Ferris accrued when she first learned of his faulty valuation in May, 1978.

> "The earnest money agreement was an established liability, *notwithstanding potential contract defenses.* The legal costs plaintiff assumed to resist her contractual duty to convey likewise constituted harm." 297 Or at 788. (Citations omitted; emphasis supplied.)

*Jaquith* makes clear that the fact that the plaintiff did not know the full extent of damage she had suffered and might have been able to recover from the harm suffered does not delay the running of the Statute of Limitations. The plaintiff had incurred attorney fees in defending the action for specific performance.

Because plaintiff knew that she had suffered harm in 1987, and knew the cause and the identity of the tortfeasor at that time, her notice of claim was not timely under ORS 30.275. The trial court did not err in granting defendant's motion for summary judgment.

Affirmed.

**ROSSMAN, J.,** dissenting.

A summary judgment must be affirmed by this court if there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law. Although the majority cites that rule, it does not apply it. Instead, it decides, as a matter of law, when plaintiff discovered her injury; *i.e.,* it decides a disputed *fact.* I would reverse and remand for that determination to be made by a jury.

In 1987, plaintiff had been told: (1) one of her Fallopian tubes was acting as a "natural" contraceptive by preventing implantation of fertilized ova; (2) her efforts to conceive had been unsuccessful because of the abnormal location of that tube; (3) defendant might have been responsible for the tube's location; (4) surgery was required to correct the situation; and (5) she would have no difficulty in becoming pregnant after surgery, because her *fertility* was unaffected. Only in 1989, after she had undergone corrective surgery and subsequent tests, was she diagnosed as permanently infertile. She gave notice of her malpractice claim within 180 days.

On those facts, a jury could find that plaintiff's belief that she had a correctible contraceptive condition did not constitute "discovery" of her permanent infertility, which is the injury that, unbeknownst to her and her doctors, she sustained in 1985. That is, a jury could conclude that her claim was timely filed. The cases relied on by the majority do not require a different result. In fact, those cases involved plaintiffs who were aware of a problem, but took no action to remedy it. They passively accepted their condition and, later, when their injuries were found to be greater than had anticipated, they were barred from suing. Here, plaintiff actively sought second opinions, tests and surgery to determine what was the matter. This court should not determine that, as a matter of law, she discovered her injury in 1987. It was not until 1989 that she learned that her inability to conceive was the result of the D & C in 1985 that had rendered her permanently infertile. Because a reasonable jury could reach a different conclusion than the majority, and because this case presents a factual question that belongs in the hands of a jury, I dissent.

Riggs, De Muniz and Durham, JJ., join in this dissent.