Harold BIBEAU and Melanie Ann Dooyen Bibeau on their own behalf and as Representatives of Classes of Similarly Situated Persons, Plaintiffs,

v.

PACIFIC NORTHWEST RESEARCH FOUNDATION, INC., a Washington Corporation; Battelle Pacific Northwest Laboratories, a division of Battelle Memorial Institute, Inc., an Ohio Corporation; Mavis Rowley; Dr. Daniel DiIaconi, in his individual and former official capacity; Dr. Fernando Leon, in his individual and former official capacity; Robert D. Wildman, in his individual and former official capacity; Dr. John Randolph Totter, in his individual capacity; Dr. James Leslie Liverman, in his individual capacity; Robert L. Ferguson, in his individual capacity; and, the United States of America, Defendants.

No. CIV. 95-06410-HO.

United States District Court,
D. Oregon.

July 28, 1997.

350

Roy S. Haber, Eugene, OR, Stanley Siegel, Bernadette M. Rappold, Eric L. Cramer, Laura Stein, Kendall S. Zylstra, Berger & Montague, PC, Philadelphia, PA, H.W. Cummins, E. Cooper Brown, Berger & Montague, PC, Takoma Park, MD, for Harold Bibeau.

Milo Petranovich, Lane, Powell, Spears & Lubersky, Paul T. Fortino, Michael H. Simon, Perkins, Coie, Portland, OR, Paul R. Cressman, Sr., Seattle, WA, for Pacific Northwest Research Foundation Inc.

Kent B. Thurber, Davis Wright Tremaine, Portland, OR, William R. Squires, III, Seattle, WA, for Battelle Pacific Northwest Lab.

David A. Ernst, Jeremy E. Zuck, Scott A. Brooksby, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, for Daniel Diiaconi.

Alan M. Spinrad, John D. Walch, Samuels, Yoelin, Wiener, Kantor & Seymour, Portland, OR, for Fernando Leon.

Kristine Olson, U.S. Attys. Office, Portland, OR, Frank W. Hunger, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, DC, James L. Sutherland, Asst. U.S. Atty., Eugene, OR, Richard Montague, Dept. Of Justice, Washington, DC, for John Randolph Totter.

## ORDER

HOGAN, District Judge.

Before the court are defendants' motions for summary judgment (#s 143, 150, 154, 160). Defendants Pacific Northwest Research Foundation (PNRF), Mavis Rowley (Rowley), Battelle Pacific Northwest Laboratories (BPNL), and Dr. Daniel DiIaconi (DiIaconi) argue that summary judgment should be granted because plaintiffs' claims are barred by the statute of limitations, and they are shielded from liability by qualified immunity. PNRF and Rowley also argue that their motion for summary judgment should be granted because their research was conducted in good faith. Defendant DiIaconi also argues that his motion for summary judgment should be granted as to plaintiffs' federal claims because he is not subject to *Bivens* liability, and as to plaintiffs' state claims because plaintiffs never provided tort claims notice, and ORS 30.265(1) bars plaintiffs' state law claims against him. Having considered the briefs filed by the parties, and materials submitted therewith and in opposition to, the court finds as follows:

### I. BACKGROUND FACTS

Plaintiffs, husband and wife, on their own behalf and as representatives of a class of similarly situated persons, claim that from 1963 to 1973 defendants conspired to fraudulently induce prisoners in custody of the Oregon Department of Corrections (DOC) to volunteer for a program of experiments,

known as the Heller experiments (Experiments), testing the effects of radiation exposure to the testes. The Experiments involved irradiating inmates' testes with x-ray radiation, and, allegedly, injecting inmates with radioactive substances. Participation in the Experiments required subjects to undergo biopsies and to agree to a vasectomy as a condition of participation. Plaintiffs allege that they were not fully informed of all the potential risks of participation in the Experiments, and that they were deliberately mislead as to potential health consequences. Thus, they claim, although they consented to participation in the Experiments, the consent was not sufficiently well-informed to be valid.

Harold Bibeau, the only named plaintiff/subject in this action, was a subject in the Experiments from 1965 to 1969, while an inmate at the DOC. Bibeau contends that Dr. Heller mislead him as to the risks and potential long term health consequences of participation in the Experiments, including an alleged increased risk of cancer.[1]

Dr. Heller informed Bibeau that the purpose of the Experiments was to study the effects of radiation on human testes. Dr. Heller also informed Bibeau that his participation in the Experiments would require periodic testicular biopsies and an x-ray exposure of his testes. He also was informed that he would be required to undergo a vasectomy at the conclusion of his participation, because of the chance that there could be chromosomal damage, which could produce mutated offspring. Heller also informed Bibeau that he might experience some reddening of the skin in his groin area, akin to a sunburn, that would last a few days, but no other long-term health consequences. Dr. Heller did not inform Bibeau that exposure to radiation might lead to an increased risk of cancer.

Bibeau consented in writing to participation in the Experiments. He agreed "to submit to x-ray radiation exposure of [his] scrotum and testes ... to donate urine samples, semen samples, and blood samples periodically ... to a surgical procedure known as a testicular biopsy, performed a number of

times ... to a vasectomy operation at the completion of the experimental procedures." Bibeau acknowledged "that sterility may result from these procedures," and "that there may be some skin burn from the radiation." Bibeau was paid for his participation in the Experiments.

Defendant Dr. Leon performed Bibeau's first biopsy related to the experiments in January, 1965. Bibeau experienced testicular swelling in the hours following the procedure, and sharp testicular pains over the next few days. Bibeau indicates that he had not been warned about these symptoms.

On September 29, 1965, Bibeau underwent his first and only x-ray session as a participant in the Experiments. He received 18.5 rads of radiation. After the procedure, Bibeau did not report any pain, only a warm feeling in his testicles which dissipated the next day.

Bibeau underwent several testicular biopsies after his single exposure to radiation. Bibeau experienced "excruciating pain" during "a couple" of the biopsies. He claimed that "[i]t feels like you've hit yourself on the crossbar of a bicycle, where you have an excruciating pain that starts in your testicle and radiates clear up into your side, and you have the reflex to immediately dive into a fetal position." Bibeau allegedly was told that the post-biopsy pain was normal and temporary.

Bibeau underwent a vasectomy in late 1968 or early 1969 prior to his release from prison. His participation in the Experiments ended with his release from prison.

In the 1970s, Bibeau experienced recurring sharp testicular pain. Like the pain he suffered after biopsies were performed, he felt "a shooting pain that goes from the testicle up into the midsection of [his] body." Plaintiff continued to suffer from bouts of this pain until at least 1994. Bibeau claims that he did not associate his recurring, excruciating testicular pain with similar pain he suffered immediately after being biopsied. Rather, he attributed his recurring testicular pain, which he describes as a common male

---

1. As of 1997, over thirty years after Bibeau's participation in the Experiments, he has not been

diagnosed with cancer, or any precancerous condition.

health problem, to sitting for too long in one position.

In the early 1970s, Bibeau also began to suffer from "an ongoing, periodic groin rash," which appeared on the very tops of the insides of [his] legs." Bibeau explains that "his skin turns brown it gets itchy." Bibeau contends that his groin rash is merely "common male jock itch." In 1979, Bibeau also noticed a "lymph node lump" on his left arm and back, and a wart on the inside of his upper right leg.

Bibeau did not consult a medical doctor regarding his testicular pain, or tell any medical doctor about his participation in the Experiments, until 1997.

Dr. Heller, and his colleagues published the results of the Experiments in several scientific journals available to the public. A series of articles published from 1965 to 1974 by Heller and defendant Mavis Rowley in various scientific journals addressed the design, goals, methods and findings of the Experiments. Bibeau was informed at the outset of his involvement in the Experiments that the results would be published in scientific journals.

In addition, since the early 1970s, the Experiments have received media coverage in national newspapers and periodicals, such as the *New York Times*, the *Washington Post*, and *Time* Magazine, wire services, such as the Associated Press and United Press International, and regional and local newspapers, such as the *Salem Statesmen–Journal*, the *Seattle Times*, *Willamette Week*, and the *Oregonian*, and in tabloids such as the *National Enquirer*. In varying degrees of detail, the articles describe the purpose of the Experiments, the people and agencies involved, the methods employed, and the subjects who participated. Many articles, appearing as early as the 1970s, discuss the potential health consequences of the Experiments, including the possibility of increased risk of cancer. Other articles discuss whether inmates were fully informed of the risks of the Experiments. An article in 1985 in the *Statesmen–Journal*, identifies Bibeau by name, as a participant in OSP radiation research. Articles also provide coverage of legal and legislative activities relating to the Experiments, and other medical experimentation at OSP, such as the Oregon Corrections Department's 1973 decision to ban testing on prisoners, the series of federal lawsuits filed by ex-Heller research participants in 1976 and 1989, raising allegations of fraud, battery, and failure to warn of health risk, the public disclosures made by the Energy Research and Development Administration in 1976, regarding the role of its predecessor, the AEC, in the OSP research, the investigation in 1986 by a United States House of Representatives Subcommittee into government sponsored human experimentation, which resulted in the publication of a report entitled "American Nuclear Guinea Pigs: Three decades of Radiation Experiments on U.S. Citizens," (The "Markey" report), and the Oregon Legislature's passage of 1987 Or.Laws 486 § 1, which authorized free follow-up medical care for participants in OSP research.

In 1985, the Oregon Corrections Division attempted to contact Bibeau by letter at his last known address to inform him that OSP would provide his medical records to his physician should he want to seek a physical follow-up.

Bibeau claims that he did not read any articles regarding the Experiments until 1993. In 1993, he read an article in the *Oregonian* containing a summary of a speech given by then-Secretary of Energy Hazel O'Leary about the government's involvement in human radiation experiments. Bibeau indicates that until he read this article, and learned of O'Leary's speech, he believed the Experiments were "perfectly safe." O'Leary did not specifically refer to the Experiments in her speech.

### LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23,

106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *Id.* at 631. Inferences drawn from the facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

### DISCUSSION

The parties agree that the statute of limitations on both the state and federal claims in this case is two years, as provided by ORS 12.110(1). The parties further agree that state law controls when the limitations period begins to run as to state claims, and that federal law determines when the limitation period begins to run as to federal claims. However, the parties dispute when the statute of limitations began to run in this case. Defendants argue that the limitation period under both state and federal accrual law began to run, and expired, long before plaintiffs commenced this action.

### 1. Federal Claims

■ Under federal law, "a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Gibson v. United States,* 781 F.2d 1334, 1344 (9th Cir.1986) (quoting *Cline v. Brusett,* 661 F.2d 108, 110 (9th Cir.1981). When plaintiffs knew "both the fact of injury and its immediate physical cause ... [their] cause of action accrued." *Dyniewicz v. United States,* 742 F.2d 484 (9th Cir.1984) The " 'cause' is known when the immediate physical cause of the injury is discovered." *Davis v. United States,* 642 F.2d 328, 331 (9th Cir.1981). A plaintiff need not realize or appreciate the full extent of his or her injury for the statute to accrue. *Ash-*

*ley v. United States,* 413 F.2d 490, 493 (9th Cir.1969).

■ As referenced by the court in its September 27, 1996, Order, an exception to the rule that a cause of action accrues at the time of injury applies to plaintiffs whose injuries are inherently unknowable or who are blamelessly ignorant of the existence of their injuries and/or their cause. *In re Swine Flu,* 764 F.2d 637, 638 (9th Cir.1985). In such cases, the federal "discovery rule," also referred to as the "diligence-discovery" rule, applies, and the claim "accrues, and statute of limitations starts to run, when a 'plaintiff has discovered, or in the exercise of reasonable diligence should have discovered,' both his injury and its cause." *Herrera–Diaz v. United States,* 845 F.2d 1534, 1537 (9th Cir.1988) (citations omitted); *In re Swine Flu,* 764 F.2d at 639–40.

#### a. Knowledge of Injury

■ Defendants argue that the discovery rule cannot apply to this case as plaintiff Bibeau was aware of his injury and its cause many years before he filed suit. Defendants argue that the purpose, nature, procedures, and risks associated with the Experiments were disclosed to plaintiff Bibeau at the time the Experiments occurred. Further, defendants argue that Bibeau's testimony in his deposition indicates that he understood the nature of the Experiments when he volunteered for them, and that over the years he experienced symptoms which did, or reasonably should have, put him on notice of his claims. With respect to physical symptoms, defendants argue that Bibeau's testicular pain, and other symptoms, which he experienced immediately after being biopsied, and which recurred from the 1970s until at least 1994, put Bibeau on notice of defendants' tortious conduct.

I agree with defendants that Bibeau's alleged injuries and their cause were not "inherently unknowable." Although he did not seek medical attention, clearly he was aware of his recurring testicular pain, and groin rash, as well as his participation in, and details regarding the Experiments. Even if it is true, as Bibeau suggests, that recurring

testicular pain is a common male health problem, a reasonable person, who knowingly participated in an experiment that involved exposing his testes to radiation, and undergoing several biopsies and a vasectomy, and who experienced recurring testicular pain for nearly thirty years after his participation, which was similar to pain he suffered immediately after being biopsied, would have associated the pain with the experiments, accurately or not, or at least would have made inquiries regarding a possible connection.[2] *See, e.g., Nemmers v. United States,* 795 F.2d 628, 631 (7th Cir.1986) (running of statute of limitations depends on reactions of the objective, reasonable person).

### b. Diligence requirement

Defendants also argue that, as a matter of law, the discovery rule cannot apply in this case because plaintiff Bibeau did not diligently investigate his alleged injury. Plainly, the discovery rule requires a plaintiff to diligently investigate his or her claims. *Herrera–Diaz v. United States,* 845 F.2d at 1537. The very purpose of the discovery rule is to excuse a plaintiff's "blameless ignorance" of his injury and its cause. *Id.* Yet, "a plaintiff who remains ignorant through lack of diligence cannot be characterized as blameless." *Arvayo v. United States,* 766 F.2d 1416, 1423 (10th Cir.1985); *Mendez v. United States,* 732 F.Supp. 414, 422 (S.D.N.Y.1990) ("It is necessary ... that a plaintiff exercise 'diligence' in order to benefit from the blameless ignorance rule.").

Here, notwithstanding the fact that Bibeau experienced excruciating, radiating testicular pain, and other symptoms, immediately after being biopsied, and then repeatedly for thirty years after his participation in the Experiments, Bibeau did not investigate in any manner his apparent injury until, at the earliest, 1993. It is undisputed that Bibeau did not request a single document from any of the several defendants, all of whose identities he knew, regarding the Experiments until after the 1993 O'Leary press conference. *C.f. Hartnett v. Schering Corp.,* 2 F.3d 90, 93 (4th Cir.1993) ("We find, in cases involving medical issues, a reasonably diligent investigation must, at a minimum, include an attempt to obtain and review all available medical records."). Nor did Bibeau take the obviously fundamental step of seeing a doctor until 1997 about the pain which he now attributes, it appears, to the Experiments. Given the plethora of information in the public domain regarding the risks of radiation exposure, generally, and the Heller experiments, specifically, had Bibeau explained his participation in the Experiments to a medical doctor, to the extent there is merit to his case, presumably he would have learned that there was a possibility that his symptoms were related to the Experiments. *Fernandez v. United States,* 673 F.2d 269, 271 (9th Cir.1982).

Plaintiffs complain that they did not have adequate information regarding Bibeau's injury and its cause to even know that he had been injured until 1993. Even if true that Bibeau was not actually aware of a possible connection between his symptoms and the Experiments, because of his complete failure to investigate, his lack of knowledge is not dispositive. *See Chrysler Workers Ass'n v. Chrysler Corp.,* 834 F.2d 573, 579 (6th Cir. 1987) ("the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons, and, in effect, closed their eyes to evidence and objective facts concerning the accrual of their right to sue."). Essentially, Bibeau suggests that his claims cannot have accrued until he happened to read an article in the paper regarding the O'Leary press conference in 1993. Accrual of a claim does not depend, however, on fortuity. *See Mendez v. United States,* 732 F.Supp. 414, 428 (S.D.N.Y.1990) (rejecting plaintiff's argument that claim accrued when she read article in paper regarding same subject, as "following the rationale of [plaintiff], this action would not have been brought had plaintiff not have read the *New York Post* article on October 20, 1982—which

---

**2.** Plaintiff does not explain what is "common" about recurrent testicular pain that is so severe that "[i]t feels like you've hit yourself on the crossbar of a bicycle, where you have an excruci-ating pain that starts in your testicle and radiates clear up into your side, and you have the reflex to immediately dive into a fetal position."

in fact could have been published at any point in time, or not at all.").

Plaintiffs offer several reasons why their lack of diligence should not preclude application of the discovery rule. Plaintiffs argue that they relied on the assurance of Dr. Heller that participation in the Experiments was safe, and, thus, their lack of diligence should be excused. *See In re Swine Flu,* 764 F.2d at 641 (where plaintiff relies on assurance of doctor that conditions are normal and not the result of wrongdoing or malpractice, plaintiff may not be found to have failed to exercise reasonable diligence in pursuing his claim). Of course, reliance on a doctor's assurances must be reasonable in order to suspend the due diligence requirement. *See Allen v. A.H. Robins,* 752 F.2d 1365, 1371 (9th Cir.1985) (patient may *reasonably* rely on doctor's assurances). Here, Bibeau allegedly was told in the 1960s that the excruciating testicular pain, and swelling, as well as other symptoms that he experienced, were normal and temporary. Plaintiffs' continued reliance on these stale assurances notwithstanding the recurrence of severe testicular pain from the 1970s until at least 1994, was not reasonable. Moreover, it was hardly a secret through the Cold War years that radiation exposure was potentially dangerous. Plaintiffs' suggestion that they had no reason to suspect that the Experiments might not have been safe is, thus, dubious.

■ Plaintiffs also argue that defendants' alleged deliberate withholding, and fraudulent concealment of "critical facts" central to plaintiffs' claims, excuses their lack of diligence. *See Barrett v. United States,* 689 F.2d at 324, 333 (deliberate withholding and fraudulent concealment of critical facts tolls accrual). Plaintiffs fail to create a genuine issue of fact as to the withholding of "critical facts." Even if, as alleged, certain facts were withheld, such as the exact dose of radiation administered to Bibeau's testes, an unsupportable contention, given that Bibeau never even requested any information regarding the Experiments until at the earliest 1993, there is no evidence that *critical facts* were withheld. *See Gibson v. United States,* 781 F.2d at 1344 (fact of injury and immediate physical cause are critical facts for purpose of claims accrual analysis).

Plaintiffs suggest that *Barrett v. United States,* 689 F.2d 324 (2d Cir.1982) is "directly analogous." In *Barrett,* the plaintiff's decedent died from the injection of a mescaline derivative administered to him while he unknowingly served as a test subject in an Army Chemical Corps (ACC) chemical warfare experiment in the early 1950s. The ACC did not obtain the decedent's consent, or even inform him of his participation in the experiment. *Id.* at 326. Notwithstanding plaintiff's effort to obtain information regarding the matter, the ACC actively concealed its identity, its role, and the very existence of the drug research program from plaintiff and the New York state court system until 1975. For example, after the decedent's death, the ACC altered the decedent's records such that it appeared as if the drug was administered for therapeutic reasons by the Army Medical Corps. *Id.* at 327. Further, the existence of the drug program was classified as a defense secret, and defense counsel was informed that disclosure of information regarding the program was punishable under the Espionage Act. All of this information remained classified until 1975. *Id.* at 328. Based on these facts, the court held that there were factual disputes as to the extent of the Government's concealment of critical facts and the diligence exercised by plaintiffs. *Id.* at 330.

The case at bar stands in stark contrast to *Barrett.* Here, Bibeau was informed from the start of his participation in the Experiment. It is undisputed that he knowingly participated in the Experiments, and was aware of the various procedures he underwent. Further, there is no evidence that defendants concealed their identities, involvement, or roles in the Experiments from plaintiffs or others. Scientific journal articles specifically about the Experiments, published in the 1960s and 1970s, and references to the Experiments in the media, starting in the 1970s, belie any claim of concealment of critical facts.

Plaintiffs next argue that the latency and complexity of Bibeau's alleged injuries, including his alleged increased risk of cancer,

delay accrual of the statute of limitations. Logically, latency and complexity only delay accrual where, as a result, a plaintiff was not aware, and could not become aware through the exercise of due diligence, of the critical facts of injury and its cause. This is not the case here.[3] Moreover, none of the cases cited by plaintiffs support the proposition advanced by them that latency and complexity excuse them from the diligence requirement. In fact, in *United States v. Kubrick*, 444 U.S. 111, 118, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979), the Supreme Court specifically rejected this suggestion (rejecting proposition that in complex cases a "plaintiff ... need not initiate a prompt inquiry and [is] free to sue at any time within two years from the time he receives or perhaps forms for himself as reasonable opinion that he has been wronged.").

■ Finally, plaintiffs argue that the doctrine of fraudulent concealment tolls the statute of limitations in this case.[4] The law is clear that in order to establish fraudulent concealment, "[t]he plaintiff must plead with particularity the circumstances surrounding the fraudulent concealment and *state facts showing his due diligence in trying to uncover the facts.*" *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir.1980) (emphasis added); *Rutledge v. Boston Woven Hose and Rubber Co.*, 576 F.2d 248, 249–50 (9th Cir.1978) (Plaintiff must "show[ ] that [defendants] actively mislead him [and] that he had neither actual nor constructive knowledge of the facts constituting his claim for relief despite his diligence in trying to discover the pertinent facts."). Plaintiff Bibeau's lack of diligence, thus, precludes application of the doctrine of fraudulent concealment. Further, plaintiffs fails to raise a material issue of fact regarding Bibeau's actual or constructive knowledge of the pertinent facts.

Even if Bibeau did not have actual knowledge of his injury and its possible cause, he could have obtained such knowledge had he investigated. *See Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499, 505 (9th Cir.1988) ("When the claim is one of concealment and the very facts allegedly concealed are available in public records, the argument that plaintiffs should, as a matter of law, be held to constructive knowledge of the cause of action is much stronger."). Plaintiffs' fraudulent concealment argument, like the other arguments they invoke to avoid the statute of limitations bar, is unavailing. Plaintiffs' federal claims are barred by the statute of limitations. Thus, defendants' motions for summary judgment are GRANTED as to plaintiffs' federal claims.

**2. State Claims**

■ In Oregon, a claim accrues when a plaintiff is aware, or in the exercise of reasonable diligence, should have been aware, that he or she has suffered a "legally cognizable harm." *Gaston v. Parsons*, 318 Or. 247, 259, 864 P.2d 1319 (1994). Such a harm consists of three elements, (1) harm; (2) causation; and, (3) tortious conduct. *Id.* at 255, 864 P.2d 1319; *Doe v. American Red Cross*, 322 Or. 502, 511, 910 P.2d 364 (1996). Accrual does not require "actual knowledge that each element is present. On the other hand, a mere suspicion is insufficient to begin the statute of limitations [running]." *Gaston*, 318 Or. at 255–56, 864 P.2d 1319. Further, a claim "accrues from the date the injury is, or should have been, discovered, not from the time the full extent of damages is ascertained." *Raethke v. Oregon Health Sciences University*, 115 Or.App. 195, 198, 837 P.2d 977 (1992), *rev. denied*, 315 Or. 442, 847 P.2d 410 (1993). Finally, as is true of the federal discovery rule, the analogous state rule is "an

---

**3.** Bibeau suggests that his claim could not have accrued because he was not aware of his increased risk of cancer, a somewhat intangible, and likely incognizable injury, until 1993. As indicated above, however, Bibeau was aware, or should have been aware, of other apparent consequences of his participation in the Experiments during the limitations period. This is sufficient to start the statute of limitations running. *See Ashley v. United States*, 413 F.2d 490 (9th Cir. 1969) (where plaintiff knows he has been in-

jured, he may not "delay filing suit until the time, however long, when he becomes knowledgeable as the precise extent of the damage resulting from the tort.").

**4.** Unlike the discovery rule, which delays accrual of a claim, the doctrine of fraudulent concealment, also known as equitable tolling, is an equitable doctrine which tolls the statute once a claim has accrued.

objective one." *American Red Cross,* 322 Or. at 512, 910 P.2d 364.

■ For the reasons discussed above, it is evident that Bibeau was aware, or in the exercise of reasonable diligence should have been aware of harm and causation in this case.[5] Plaintiff also was aware, or should have been aware, of defendants' allegedly tortious conduct. Plaintiffs contend that Bibeau was fraudulently induced to participate in the Experiments, in that certain potential health risks were not disclosed to him. Based on this alleged conduct, plaintiffs assert claims for fraud, battery, intentional infliction of emotional distress, strict liability, and breach of fiduciary duty. The alleged invasion of plaintiffs' legal interests, however described, was known or should have been known at the time Bibeau suffered injuries or consequences about which he allegedly was not warned, or concerning which he allegedly was deceived. *See, e.g., Gaston v. Parsons,* 117 Or.App. 555, 558, 844 P.2d 941 (1993) (discussing informed consent claims: claim accrues when plaintiff suffers harm about which he has not been warned.); *Mathies v. Hoeck,* 284 Or. 539, 544, 588 P.2d 1 (1978) (discussing fraud claims: "the period of limitations for fraud begins to run when the plaintiff knows or should have known of the alleged fraud.").

Here, Bibeau was not warned of the possibility of recurring radiating testicular pain, and chronic groin rash, which he knowingly experienced as early as the late 1960s, and during the over thirty years since then. Further, the Oregon discovery rule and the doctrine of fraudulent concealment, like the analogous federal rules, require the exercise of due diligence, which, for the reasons discussed above, plaintiffs fail to satisfy. *See Gaston,* 318 Or. at 256, 864 P.2d 1319 ("The discovery rule does not protect those who

sleep on their rights, but only those who, in exercising the diligence expected of a reasonable person, are unaware that they have suffered legally cognizable harm."); *Chaney v. Fields Chevrolet Co.,* 264 Or. 21, 27, 503 P.2d 1239 (1972) (fraudulent concealment delays accrual until facts discovered or should, with reasonable diligence, have been discovered.). Accordingly, plaintiffs' state law claims also are barred by the statute of limitations.[6] Defendants' motions for summary judgment, thus, are granted as to plaintiffs' state law claims.

## CONCLUSION

Plaintiff Bibeau was a participant in what appears to have been an inappropriate series of experiments on inmates at the DOC. However, this court may not hear a case, however old, simply because its facts appear compelling. Statutes of limitations are designed to "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by a loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *Kubrick,* 444 U.S. at 117, 100 S.Ct. at 357. This is such a case. Though the Court is disturbed by plaintiffs' allegations concerning the Heller Experiments, the time has come for defendants' "right to be free of stale claims" to prevail over plaintiffs' "right to prosecute them." *Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). Plaintiffs' federal and state claims are barred by the applicable statutes of limitations. Defendants' motions for summary judgment (# s 143, 150, 154, 160) are GRANTED. This case is dismissed with prejudice. All other

---

5. Unlike the state rule, the federal discovery rule does not require knowledge of tortious conduct. *See Herrera–Diaz,* 845 F.2d at 1536 ("When the injury and its cause are known, the claim accrues even though the plaintiff may not then be aware that the injury may have been negligently inflicted.").

6. Because plaintiff Bibeau's claims are barred by the statute of limitations, plaintiffs' loss of consortium claim, as a matter of law, also must fail.

*See Lakin v. Senco Products, Inc.,* 144 Or.App. 52, 81, 925 P.2d 107 (1996) ("[A] spouse's loss of consortium action 'is measured by and subject to' any defenses available in [the other spouse's] action for redress of the same harm.") (quoting *Ross v. Cuthbert,* 239 Or. 429, 397 P.2d 529 (1964). In addition, because of the court's ruling as to the statute of limitations, the court need not address the other arguments raised by defendants in their motions for summary judgment.

pending motions in this case are denied as MOOT.